760 P.2d 1174

**Mark Emilio ARAGON, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 16742.**

Supreme Court of Idaho.

Aug. 25, 1988.

Randy John Stoker, Twin Falls, for petitioner-appellant.

Jim Jones, Atty. Gen., and Lynn E. Thomas, Sol. Gen. (argued), Boise, for respondent.

BISTLINE, Justice.

Appellant Mark Aragon was convicted of first degree murder and sentenced to death. On appeal he argues that the district court erred in denying his post-conviction petition in that he was denied effective assistance of counsel, and also because he was denied the constitutional right to testify. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Aragon was convicted by a jury of murder in the first degree in the death of eight month old Monique Longoria. The trial judge sentenced him to death and the Su-

preme Court affirmed the conviction and sentence. *State v. Aragon*, 107 Idaho 358, 690 P.2d 293 (1984) (*Aragon I*). Aragon subsequently filed a civil petition for post-conviction relief. A motion for disqualification was granted and the case was assigned to District Judge Hurlbutt. Upon application the court appointed new counsel, Randy Stoker, to represent Aragon on ineffective assistance of counsel issues.

A hearing on the merits was held and the evidence adduced therein produced the following. At the time of Aragon's trial, his court appointed attorney, Robert Fallowfield, had the experience of but one felony trial; he was without any background, experience or special training in capital cases. Similarly, his partner had a civil practice and no criminal experience.

A reputable Idaho attorney well-versed in criminal law testified on behalf of the appellant as an expert. His opinion was that Aragon did not receive effective assistance of counsel with regard to the decision as to whether or not to testify, and that trial counsel violated ABA Criminal Standard 5.1(a), which directs an attorney to advise the accused with complete candor concerning all aspects of the case. He also stated that had Aragon testified, there would have been a reasonable probability that doubt would thereby be created in the jury's mind on the issue of premeditation.

The district court concluded, however, that nothing in the record established that Aragon would have testified if offered the opportunity to do so, or that he wanted to testify, or that he was denied the opportunity to testify by his counsel. The district court concluded that the alleged errors concerning effective assistance of counsel, whether taken individually or as a whole, did not constitute ineffective assistance of counsel.

## II. THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE FEDERAL AND IDAHO CONSTITUTIONS.

Aragon's contention on the denial of effective assistance of counsel argument is predicated upon the sixth amendment,[1] made applicable to the states via the due process clause of the fourteenth amendment, and also of the right to counsel clause of art. 1, § 13 of the Idaho Constitution.[2] It is directed against counsel's handling of the innocence/guilt trial, the sentencing trial, the direct appeal, and the mandatory review.

### A. The Right to Effective Assistance of Counsel Under the Federal Constitution.

In the landmark decision of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court of the United States enunciated a two part test for determining whether a defendant is denied effective assistance of counsel. First, a claimant must prove that counsel's performance was deficient. Second, a claimant must show that this deficient performance prejudiced his or her case. 104 S.Ct. at 2064.

Concerning the deficiency of performance component, there is a strong presumption that counsel's performance falls within the "wide range of professional assistance." Id. at 2065. Accordingly, the defendant bears the burden of proof to show that "counsel's representation fell below an *objective* standard of reasonableness." *Id.* at 2064 (emphasis added). The effectiveness of counsel's performance must be evaluated from counsel's perspective at the time of the alleged error, not with hindsight. *Id.* at 2065.

---

1. The sixth amendment provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

2. Article 1, § 13 of the Idaho Constitution provides in pertinent part: **"Guaranties in criminal actions and due process of law.—**In all criminal prosecutions, the party accused shall have the right ... to appear and defend in person and with counsel."** The Idaho legislature has defined this constitutional right where indigents are defendants. *See* I.C. § 19–852.

In regard to the second element, the Supreme Court has defined prejudice as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. Prejudice is presumed in some instances, for example, where the defendant is denied counsel altogether, or where counsel represents conflicting interests. Generally, however, the defendant must affirmatively prove prejudice. *Id.* at 2067.

B. The Right to Effective Assistance of Counsel Under the Idaho Constitution.

Article 1, § 13 of the Idaho Constitution assures criminal defendants of "reasonably competent assistance of counsel." *Gibson v. State,* 110 Idaho 631, 635, 718 P.2d 283, 287 (1986) (quoting *State v. Tucker,* 97 Idaho 4, 8, 539 P.2d 556, 560 (1975); *State v. Estes,* 111 Idaho 430, 434, 725 P.2d 135, 139 (1986)). In evaluating counsel's conduct, this Court has used as a "starting point" the American Bar Association's standards entitled "The Defense Function," which are also a guide by which counsel's performance is judged in a disciplinary proceeding. *Tucker, supra,* 97 Idaho at 9, 539 P.2d at 561. Strategic and tactical choices should not be second-guessed. *State v. Larkin,* 102 Idaho 231, 233, 628 P.2d 1065, 1067 (1981). However, "when counsel's trial strategy decisions are made upon the basis of inadequate preparation, ignorance of the applicable law, or other shortcomings capable of *objective* evaluation, the defendant may very well have been denied effective assistance of counsel." *Tucker,* 97 Idaho at 10, 539 P.2d at 562 (emphasis added). It is presumed that counsel is competent and that trial tactics were based on sound legal strategy. *State v. Freeman,* 110 Idaho 117, 122, 714 P.2d 86, 91 (Ct.App. 1986). The burden is on the defendant to prove a claim of ineffective assistance of counsel. To prevail, a defendant must establish "that the conduct of counsel contributed to the conviction or to the sentence imposed." *Tucker,* 97 Idaho at 12, 539 P.2d at 564.

In *Gibson, supra,* this Court stated:

A superficial comparison between the standards discussed in the above cases and the federal standard reveals considerable similarity. Despite this similarity, we are aware that the Idaho Constitution potentially *can* be read to afford a broader right to effective counsel than does the federal Constitution. *State v. Newman,* 108 Idaho 5, 10 n. 6, 696 P.2d 856, 861 n. 6 (1985).

110 Idaho at 635, 718 P.2d at 287 (emphasis added). To date that has not taken place. However, as noted in *Gibson,* we have not yet been required to define the differences between the rights afforded by federal and state constitutions. *Id.* Nor are we required to do so here. Our review of the record persuades us that the district court did not err in concluding that Aragon failed to establish that counsel's conduct contributed to the conviction.

III. INEFFECTIVE ASSISTANCE OF COUNSEL EXAMINED.

A. Counsel's Inexperience.

Aragon's primary contention is that his trial counsel's inexperience in capital cases caused his counsel to be ineffective. Counsel's experience was limited to the trying of only one felony case involving the charge of a defendant's failure to appear. His experience otherwise had been in criminal misdemeanor trials as Blaine County's public defender since 1976. In representing Aragon he had some assistance by associate counsel Michael Donovan; Donovan, too, had never participated in a capital case.

In support of his contention that counsel's inexperience denied him effective representation, Aragon argues that counsel's performance must be evaluated subjectively rather than objectively. "Counsel does not," so the argument goes, "read the *Strickland* decision to require an objective evaluation of trial counsel's performance." Appellant's Brief at 29. We are not persuaded. The dispositive facts upon which an ineffective assistance claim succeeds or fails centers on counsel's performance, not the level of his or her experience.

Furthermore, *Strickland* teaches that the defendant bears the burden of proof in showing that "counsel's representation fell below an *objective* standard of reasonableness." 104 S.Ct. at 2064 (emphasis added). Similarly, in *Tucker, supra,* this Court stated that the alleged errors of counsel, such as inadequate preparation or ignorance of relevant law, will be reviewed by an objective evaluation. 97 Idaho at 10, 539 P.2d at 562. Thus, it is of no more moment that counsel has fifty successful defenses to his credit than if counsel had never tried one capital case. Ineffective representation by a member of the bar of twenty year's experience is no less damning to the constitutional rights of the capital defendant than are the foibles of the attorney just out of law school. Accordingly, we decline to alter the objective approach of evaluation of ineffective assistance of counsel claims established in prior decisions as exemplified in *Tucker* and *Strickland.*[3]

**B. Ineffective Assistance and the Right to Testify.**

■ The second assignment of error centers on the contention that each criminal defendant has a constitutional right to testify. Aragon submits that he was denied this constitutional right and therefore effective assistance of counsel because trial counsel alone made the decision not to testify, and because the trial court did not require Aragon to waive his right to testify on the record.

Recently in *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), the Supreme Court of the United States for the first time squarely addressed that very issue. Justice Blackmun, writing for the majority, stated that the right of criminal defendants to testify is indeed guaranteed by the due process clause of the fourteenth amendment, the compulsory process clause of the sixth amendment, and the fifth amendment privilege against self incrimination.[4] 107 S.Ct. at 2709-2710. With that we encounter no problem. But, the issue here narrows down to the contention that it was *counsel's* decision that Aragon not testify. In support of this argument he cites the American Bar Association's "Standards for the Defense Function," Standard 4–5.-2(a) (2d ed. 1980), which provides:

Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are:

(i) what pleas to enter;

(ii) whether to waive jury trial; and

(iii) whether to testify in his or her own behalf.

In *Tucker, supra,* this Court went so far as to note that the standards promulgated by the ABA are a "starting point" for determining whether a defendant has been denied effective assistance of counsel, but "we expressly reserve[d] for further determination whether a violation of any one standard" is dispositive. 97 Idaho at 8–9, 539 P.2d at 560–61. Nor does the instant appeal provide us with such an opportunity. Our review of the record persuades us that, contrary to Aragon's contention, the decision to refrain from taking the stand was not made by trial counsel, nor did

**3.** Nevertheless, we admonish trial courts in capital cases to appoint counsel with knowledge of capital law whenever possible. Commentator Marshall Dayan forcefully argues that it is important:

... to avoid the pitfalls of having attorneys appointed by the courts to represent death row inmates who are unfamiliar with the rapidly changing but essential body of law relating to the death penalty. Many of the problems in capital cases are the result of trial counsel being unfamiliar with such techniques and issues, and a substantial majority of trial counsel in death penalty cases are appointed by the courts. Even when the representation provided at trial does not constitute ineffective assistance of counsel, the strategic choices made by such counsel are often made without the benefit of experience in the area, or without consultation with attorneys who specialize in death penalty litigation.

Dayan, *Payment of Costs in Death Penalty Cases,* 22 CRIM.L.BULL. 18, at 27 (1986) (footnotes omitted).

**4.** The *Rock* court went on to hold that Arkansas' *per se* rule excluding all hypnotically refreshed testimony infringes impermissibly on a criminal defendant's right to testify on his or her behalf. 107 S.Ct. at 2714-2715.

counsel contravene ABA standards. Rather, the record shows the decision not to testify was Aragon's.

Q During your conversations you discussed with him [Aragon] the evidence the State had; is that correct?

A [Counsel Fallowfield]: Yes.

Q Discussed with him the law dealing with the charges.

A Yes.

Q And you reviewed the discovery with Mr. Aragon provided to you by the State?

A Yes.

Q Did the defendant know that he could testify?

A Yes.

Q Did you prevent the defendant from testifying in any way?

A No.

Q Did you have a full consultation with the defendant about his right to testify?

A I don't think there was any questions but that he realized that he was well aware that he could testify. In fact, there is no question in my mind that he knew he could testify.

R., p. 144. Thus, we agree with the district judge that Aragon was not denied his right to testify.

▮ Aragon urges that we adopt the approach of *People v. Curtis*, 681 P.2d 504, 509 (Colo.) (en banc) (1984), where the court held that the trial court is duty-bound to secure a waiver of the right to testify, *on record*, if an accused does not take the stand. *Curtis*, however, insofar as we can ascertain has not been followed by any other court.

In our opinion, a better rule was enunciated in *People v. Simmons*, 140 Mich.App.

681, 364 N.W.2d 783 (1985), which held that the defendant's right to testify at trial does not require an on-the-record waiver. It was stated:

We agree with the majority of courts which have addressed this issue and decline to require an on-the-record waiver of defendant's right to testify. Such a requirement would necessarily entail the trial court's advising defendant of his right to testify. As the Wisconsin Supreme Court stated in [*State v. Albright*, 96 Wis.2d 122, 291 N.W.2d 487, 493 (1980)], a formal waiver requirement might 'provoke substantial judicial participation that could frustrate a thoughtfully considered decision by the defendant and counsel who are designing trial strategy.'

364 N.W.2d at 785. *Accord United States v. Ives*, 504 F.2d 935 (9th Cir.1974). Our holding today in no way eviscerates the right to testify.

▮ Aragon also argues that he received ineffective assistance of counsel because his attorney did not call witnesses to bolster Aragon's character at trial. The decision whether to call character witnesses is a strategic decision which ordinarily should not be second guessed on appeal. *See State v. Larkin*, 102 Idaho 231, 233, 628 P.2d 1065, 1067 (1981). We note, however, that the decision regarding character witnesses was not due to inadequate investigation on counsel's part.[5] Counsel, associate counsel, and a defense investigator interviewed Aragon's family and people that knew him. Further, had witnesses testified as to Aragon's good character, the "door would have opened" for the prosecutor to rebut the same, which might have brought out Aragon's two prior felony con-

---

5. The testimony taken at the hearing in substantiation of this conclusion includes:

Q. In the course of your investigation of the investigation that was done with [associate counsel] Mr. Donovan and [investigator] Mr. Ducharme, did you talk with members of Mark [Aragon's] family?

A. [Counsel Fallowfield]: Yes.

Q. People that knew him?

A. Yes.

Q. In effect investigate the people that he told you knew something about his life?

A. Yes.

Q. All right. And is it your testimony that you considered whether to call those persons and that you made the decision not to call them?

A. Yes.

Q. Why did you make that decision?

A. I didn't think they would be helpful to my case.

R., p. 86–87.

victions, including a stabbing in Jerome County in 1978. *See* I.R.E. 404 (a)(1).

We agree with the district judge, notwithstanding the expert testimony to the contrary, that Aragon was not denied effective assistance of counsel at trial. As discussed above, counsel's performance was not deficient. Even if it were assumed that counsel's performance was deficient, Aragon has failed to carry the weighty burden of ·establishing prejudice, "that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, supra,* 104 S.Ct. at 2068. Trial counsel's shortcomings, if any, did not so undermine the adversarial process as to deny Aragon a fair trial.

### C. The Effectiveness of Counsel at Sentencing.

■ Aragon also contends that he was denied effective assistance at sentencing. The standards for evaluating ineffective assistance claims at sentencing parallels those at trial. *Strickland, supra,* 104 S.Ct. at 2064. Aragon's claim rests on two points: first, that counsel failed to call character witnesses at sentencing other than Dr. David Sanford, a psychologist; and second, that counsel did not investigate Aragon's prior felony convictions to determine whether he received effective assistance of counsel in those proceedings.

As discussed previously, the decision to call character witnesses is a strategic decision immune from appellate second-guessing. Counsel, associate counsel, and an investigator interviewed Aragon's family and friends, after which time counsel decided it was not in his client's best interests to call them at sentencing. Moreover, Aragon has failed to demonstrate that there were witnesses ready, willing, and able to testify as to his good character, in order to establish mitigating circumstances pursuant to I.C. § 19–2515. Bare assertions or speculation, unsupported by specific facts, do not suffice to prove ineffective assist-

ance of counsel. *State v. Kelling,* 108 Idaho 716, 720, 701 P.2d 664, 668 (1985).

Aragon's second argument is based on counsel's failure to determine whether Aragon received effective assistance of counsel when he was convicted of two prior felonies. Again Aragon has failed to proffer any specific proof to establish that he received ineffective assistance in the prior proceedings. We decline to adopt a rule whereby counsel will be forced to scrutinize each and every aspect of a client's prior criminal record, out of fear of rendering ineffective assistance, to determine if the client's rights were protected in the prior proceeding. Consequently, we find no basis for reversal.[6]

### D. Ineffective Assistance on Direct Appeal.

It is asserted that Aragon's trial counsel on taking the direct appeal rendered ineffective assistance in failing to raise constitutional arguments concerning the death penalty, erroneously assuming they could be argued in post-conviction proceedings. Aragon submits that this assumption of his appellate counsel deprived him of effective representation because such constitutional arguments could not be argued on the merits in light of the trial court's finding of *res judicata* in the post-conviction proceeding.

■ In *Kraft v. State,* 100 Idaho 671, 603 P.2d 1005 (1979), we cited the rationale for *res judicata:*

> We think the correct rule to be that in an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim *but also as to every matter which might or should have been litigated in the first suit.*

100 Idaho at 673, 603 P.2d at 1007 (emphasis added in *Kraft*) (quoting *Joyce v. Murphy Land Etc. Co.,* 35 Idaho 549, 553, 208 P. 241, 242 (1922)). Thus, the trial court

**6.** We do note, however, that if counsel does become aware that a client's prior conviction is clearly unlawful, he is duty-bound to argue such at sentencing on a new charge.

did not err in barring Aragon from arguing the constitutionality of the death penalty in post-conviction proceedings. Under *Kraft*, such issues should have been brought on direct appeal. The issue becomes, then, whether his appellate counsel rendered ineffective assistance by not making the constitutional arguments on direct appeal.[7]

At the outset we note that appellate counsel did make three constitutional arguments in *Aragon I*. First, he argued that Aragon was denied a fair trial because the prosecution failed to disclose material evidence. 107 Idaho at 365, 690 P.2d at 300. Second, it was asserted that the evidence was insufficient to prove deliberation and premeditation. *Id.* at 366, 690 P.2d at 301. Because due process requires the government to prove every element of an offense beyond a reasonable doubt, *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), this, too, was a constitutional argument. Finally, appellate counsel argued that the aggravating circumstances found in I.C. § 19–2515(f)(6) and (8) are unconstitutionally vague. *Id.* 107 Idaho at 367, 690 P.2d at 302. Also, in his petition for rehearing, appellate counsel in *Aragon I* made a seventh amendment argument (that juries and not judges should sentence an individual in capital cases), *Id.* at 379, 690 P.2d at 314; and an eighth amendment argument (that the difference between first and second degree murder is unconstitutionally blurred), *Id.* at 382, 690 P.2d at 319. These five constitutional arguments raised did not attract a majority of the Court.[8]

The Supreme Court of the United States has held that if a state has created appellate courts as an integral part of the system for finally adjudicating the guilt or innocence of a defendant, as is the case in Idaho, a first appeal guaranteed as a matter of right is not adjudicated in accord with due process of law where the appel-lant does not have effective assistance of counsel. *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). In *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), the Court held that the petitioner was denied due process at the appellate level because his counsel failed to submit an appellate brief. The instant case is distinguishable. Unlike *Anders*, Aragon was not denied total access to the appellate process. As noted, his attorney made five constitutional arguments on his behalf. We cannot say that Aragon was prejudiced by counsel's failure to bring additional constitutional arguments. As Justice Jackson has stated:

> The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one.

Jackson, Advocacy Before the United States Supreme Court, 25 Temple L.Q. 115, 119 (1951) (quoted in *Jones v. Barnes*, 463 U.S. 745, 753, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983)).

Moreover, the Supreme Court of the United States has suggested in *Engle ·v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), that the failure to make constitutional arguments does not render appellate counsel ineffective: "[T]he constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Id.* at 133, 102 S.Ct. at 1574. In *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), the Court held that appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by defendant. In line with these precedents, we conclude that Aragon was not prejudiced by counsel's failure to raise additional constitution-

---

7. Aragon's additional arguments include (1) that the death penalty violates the eighth amendment's prohibition against cruel and unusual punishment because it purposefully inflicts pain unjustified by any valid state interest, and (2) the death penalty discriminates against Aragon because he is an impoverished male.

8. The present writer adheres to the views expressed in dissent, 107 Idaho at 369, 690 P.2d at 306, which did not garner a majority.

al challenges on direct appeal.[9]

In a related point, Aragon contends that the district court erred in dismissing many of his arguments raised in his post-conviction petition by granting summary judgment to the state on the basis of *res judicata*. Specifically, Aragon asserts that the district court incorrectly based his decision on an amended version of I.C. § 19–4901(b),[10] which was not in effect at the time of his post-conviction hearing.[11] However, the record does not establish that the district judge granted summary judgment on the basis of I.C. § 19–4901. Rather, the record shows that summary judgment was granted on the basis of *res judicata*. As discussed previously, our *Kraft* decision requires that in actions between the same parties upon the same claim, the former adjudication (here, direct appeal) concludes parties not only as to every matter offered, *"but also as to every matter which might or should have been litigated in the first suit."* 100 Idaho at 673, 603 P.2d at 1007 (emphasis added in *Kraft*) (quoting *Joyce v. Murphy Land Etc. Co.*, 35 Idaho 549, 553, 208 P. 241, 242 (1922)). Thus, the amended version of I.C. § 19–4901(b) and our *Kraft* decision have the same effect when applied in post-conviction proceedings. Or put otherwise, the amended version of I.C. § 19–4901(b) merely codified the pre-existing case law. Consequently, we find no error in the district court's *res judicata* ruling.[12]

9. We note that Aragon is not necessarily precluded from making constitutional arguments in federal habeas corpus proceedings. If he can establish that his "constitutional claim is so novel that its legal basis" was not available to his appellate counsel at the time of *Aragon I,* that claim will be entertained in a federal habeas proceeding. *Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984).

10. Idaho Code § 19–4901(b) now provides in pertinent part:

Any issue which could have been raised on direct appeal, but was not, is forfeited and may not be considered in post conviction proceedings, unless it appears to the court, on the basis of a substantial factual showing by affidavit, deposition or otherwise, that the asserted basis for relief raises a substantial doubt

## IV. CONCLUSION

Appellant's counsel did not render ineffective assistance at trial, sentencing, or direct appeal. Appellant has failed to carry his burden that he was prejudiced by such representation, or that his counsel's conduct contributed to his conviction. Nor was summary judgment erroneously granted on the basis of *res judicata*. Accordingly, the judgment and order of the district court is *AFFIRMED*.

SHEPARD, C.J., BAKES and HUNTLEY, JJ., and McQUADE, J., pro tem, concur.

about the reliability of the finding of guilt and could not, in the exercise of due diligence, have been presented earlier.

11. The amended version of I.C. § 19–4901(b), which added the language quoted in the preceding note, was not approved by the legislature until April 1, 1986, after the time Aragon filed his petition for post-conviction relief on January 5, 1985.

12. Not all issues, however, are barred by *res judicata* in post-conviction proceedings for failure to argue them on direct appeal. For example, ineffective assistance of counsel is a matter for post-conviction relief. *See Kraft, supra.* Also, post-conviction relief is not barred where new evidence is discovered, or where later case law suggests a conviction is unlawful. *See* I.C. § 19–4901.