970 P.2d 28

**Jeffrey Louis CARSNER, Sr., Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 24246.

Court of Appeals of Idaho.

Nov. 6, 1998.

Rehearing Denied Jan. 15, 1999.

See also, 894 P.2d 144.

Ellsworth, Kallas, P.L.L.C., Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

SCHWARTZMAN, Judge.

Jeffrey Louis Carsner appeals from the district court's dismissal of his petition for post-conviction relief. We affirm.

## I.

### FACTS AND PROCEDURE

Carsner was charged in connection with the killing of his girlfriend, Lorraine McKee. McKee died of a gunshot wound to the head, which Carsner claimed was self-inflicted. When interviewed by the police immediately after the shooting Carsner asserted that he was not in the room when the shot was fired. Although his trial counsel[1] wished to pursue a defense of accident or self-defense, Carsner refused to adopt either theory, continuing to assert that he was not in the room when McKee was shot. Immediately prior to jury selection the prosecution offered Carsner a plea bargain in which he could plead guilty to voluntary manslaughter. Carsner rejected the offer and continued to maintain that he

---

**1.** Carsner was represented by two attorneys from the public defender's office throughout all proceedings relevant to the issues under discussion.

was not present in the room when the shooting occurred.

During trial, the state argued that Carsner killed McKee following a physical struggle in their bedroom. To establish a motive for the killing, the state introduced a note written by the victim which told Carsner to move out of the house and leave both his young son and the two cars behind or "the Sheriff will be picking you up." The victim was aware that Oregon had an outstanding warrant for Carsner's arrest on a driving without privileges charge. The state also introduced high-velocity blood spatter evidence found on the clothes Carsner wore the night of the shooting. An expert testified that these spatters could only have occurred if Carsner were close to the victim at the time of the shooting.

The court issued jury instructions on second degree murder, voluntary manslaughter, and involuntary manslaughter. During their deliberations, the jury sent a note to the judge asking, "Can you define for us 'adequate provocation?' Can a nonphysical threat be an 'adequate provocation?' We are having difficulty interpreting instruction 16 & 24." [2] The state argued that further instruction was not necessary. Counsel for Carsner replied, "we would object to any further or additional instructions. I think the definitions are contained within the instructions already given to the jury." After agreement by both parties, the court sent the jury an instruction which read: "You have been fully instructed to the extent the term 'adequate provocation' has been interpreted by statute or case law. Please again review the instructions, including those you have identified as being troublesome." The jury thereafter found Carsner guilty of second degree murder.

Carsner filed a direct appeal from the judgment of conviction which included, among others, a claim that the district court

should have given the jury an instruction stating that a non-physical threat could be "adequate provocation." This Court held that if any error existed, it was invited by counsel's objection to any further instruction and declined to consider the district court's action. *State v. Carsner*, 126 Idaho 911, 894 P.2d 144 (Ct.App.1995).

Carsner then filed an application for post-conviction relief. He asserted, among other claims, that trial counsels' failure to argue for a jury instruction defining "adequate provocation" constituted ineffective assistance of counsel, as did the failure to object to parts of the state's closing argument. The district court dismissed a majority of Carsner's claims for lack of factual support. The court did not dismiss his claims of ineffective assistance of counsel for either failing to request an instruction regarding the definition of adequate provocation or for failing to object to certain portions of the state's closing argument. This order dismissing a majority of the claims was an interlocutory order, subject to modification if further factual support was presented. An evidentiary hearing was held on the remaining claims. At this hearing Carsner pursued only the jury instruction issue and explicitly waived his claim regarding the state's closing argument. The district court dismissed the post-conviction petition holding that Carsner had failed to show that counsels' decision to refrain from further instructing the jury was "made upon a basis of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation," *citing State v. Larkin*, 102 Idaho 231, 628 P.2d 1065 (1981). Accordingly, the district court held Carsner had not proven that his trial counsels' performance was deficient.

Carsner appeals from the district court's finding that trial counsels' failure to argue for a jury instruction further defining "adequate provocation" was not ineffective assis-

---

**2.** Instruction 16 stated, "Voluntary manslaughter is the intentional and unlawful killing of a human being without malice aforethought. There is no malice aforethought if the killing occurred upon a sudden quarrel or heat of passion."

Instruction 24 stated, "The distinction between murder and manslaughter is that murder requires malice while manslaughter does not.

When the act causing the death, though unlawful, is done in the heat of passion or is excited by a sudden quarrel such as amounts to adequate provocation, the offense is manslaughter. In such a case, even if an intent to kill exists, the law is that malice, which is an essential element of murder, is absent."

tance of counsel. He also appeals the district court's summary dismissal of his other claims of ineffective assistance of counsel and asserts that he is entitled to a complete reinvestigation of the facts, because he is innocent of the crime.

## II.

### THE DISTRICT COURT DID NOT ERR IN DISMISSING CARSNER'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO REQUEST A JURY INSTRUCTION

#### A. Standard of Review

 Once the district court has denied or granted the post-conviction application following a hearing, the evidence must be viewed most favorably to the trial court's findings. *Reynolds v. State,* 126 Idaho 24, 28, 878 P.2d 198, 202 (Ct.App.1994). An application for post-conviction relief is a special proceeding, civil in nature. *Campbell v. State,* 130 Idaho 546, 944 P.2d 143 (Ct.App. 1997). The rules of civil procedure are applicable in such a proceeding. *Id.* at 548, 944 P.2d at 145; *see also* I.C. § 19–4907(a) (stating that all rules and statutes applicable in civil proceedings are available to the parties in a post-conviction relief case). The applicant in a post-conviction case has the burden of proving the allegations which entitle him to relief by a preponderance of the evidence. *Campbell, supra.* On appeal, findings supported by competent and substantial evidence produced at the hearing will not be disturbed on appeal. *Sanchez v. State,* 127 Idaho 709, 905 P.2d 642 (Ct.App.1995). However, this Court freely reviews the legal conclusions drawn by the trial court from the facts found. *Sanchez,* 127 Idaho at 711, 905 P.2d at 644.

#### B. Carsner Failed to Show That Trial Counsels' Performance Was Deficient

By rejecting the state's pre-trial offer of a plea bargain, Carsner made it clear to trial counsel that he would not accept a voluntary manslaughter conviction. Rather, he steadfastly maintained that he was not in the room at the time of McKee's shooting. This was the same position he had asserted through-

out a recorded police interview directly following the shooting. Carsner continued to maintain this position knowing that the available forensic evidence did not support his view of the facts. In light of Carsner's consistent protestations of innocence, trial counsel presented a defense of absolute innocence throughout trial. The goal was to win an out-right acquittal. Carsner nevertheless asserts that his trial counsels' representation was ineffective because when the jury asked for further instruction to understand the concept of voluntary manslaughter, counsel did not request that one be given. Carsner argues that since the jury's question reflected their determination that he shot the victim, counsel should have known that an acquittal was impossible and offered an explanatory instruction promoting a voluntary manslaughter conviction. Specifically, he suggests that counsel should have requested the instruction, "Yes, 'adequate provocation' can be of a non-physical nature, if the other requirements, as given in the instructions, are present." Carsner reasons that trial counsel were ultimately responsible for determining trial strategy, and so, were ineffective when they steadfastly choose to adhere to Carsner's theory of the case.

 To prevail on a claim of ineffective assistance of counsel Carsner must show that his trial counsels' performance was deficient. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Aragon v. State,* 114 Idaho 758, 760 P.2d 1174 (1988); *Milburn v. State,* 130 Idaho 649, 946 P.2d 71 (Ct.App.1997). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Because there is a strong presumption that counsel's performance falls within the wide range of professional assistance, the defendant bears the burden of proof to show that counsel's representation fell below an objective standard of reasonableness. *Aragon,* 114 Idaho at 760, 760 P.2d at 1176, *citing Strickland,* 466 U.S. at 688, 104 S.Ct. 2052.

■ When evaluating an attorney's effectiveness the presumption is that a trial attorney is competent and that his actions represent sound trial strategy. *Estes v. State*, 111 Idaho 430, 434, 725 P.2d 135, 139 (1986).

> 'Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'

*Id.* at 433, 725 P.2d at 138, *quoting Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

■ The Idaho Supreme Court has repeatedly stated that it will not attempt to second-guess strategic and tactical choices made by trial counsel. *State v. Porter*, 130 Idaho 772, 792, 948 P.2d 127, 147 (1997); *Aragon*, 114 Idaho at 761, 760 P.2d at 1177. An exception to this general rule exists when the decisions were made due to inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation. *Campbell*, 130 Idaho at 548, 944 P.2d at 145.

At the post-conviction hearing, Carsner attempted to demonstrate that trial counsel erred when they failed to offer another jury instruction. Attorney David Nevin testified that he felt it was an error not to tell the jury that a non-physical threat can constitute adequate provocation. He further asserted that the jury must have abandoned the suicide scenario because provocation is not an issue unless the jury had already determined that Carsner killed the victim. Although hindsight makes it clear that the jury ultimately determined Carsner was involved in McKee's shooting, when trial counsel made their decision the jury's thought processes were not as obvious. At the post-conviction hearing counsel explained the tactical nature of the objection to any further instruction.

Q: And were you of the opinion, then that the jury should not be instructed further on that issue?

A: My recollection is that I was pretty adamant about it. Probably I was more the driving force than [co-counsel] was that we should not instruct the jury any further. And my reasoning for that is that it's my general rule as an attorney trying cases, I don't like, once a jury goes out, I don't like to give them further instruction upon the law because I think we've thought about the jury instructions and our theory of the case and the facts of the case and we've argued that and we've argued over the jury instructions, we have a package that we think is correct, and I don't want to change my mind and give the jury something on a split second decision when I don't know what the jury is thinking.

And I didn't know for sure what the jury was thinking. I went with my general rule. I don't know what they're thinking in there and we could be setting ourselves up for a second degree one here, too, wondering what's going on. So my recollection is, I was pretty adamant about the fact, you now, lets not tell them anything else. We don't know what they're doing. We can guess, but we don't know what they're doing. I don't want to make a spur of the moment decision....

Q: Did you want to make the decision on voluntary manslaughter any easier for the jury at that point?

A: I didn't want to because my client didn't want that. My client wanted an acquittal. And I was concerned. I know about a compromise verdict, thinking they're going to find him

guilty. And my client didn't want manslaughter. He wanted an acquittal.

While this testimony demonstrates that trial counsel took their client's wishes into consideration, it does not suggest that counsel abandoned their professional judgment in order to steadfastly adhere to Carsner's suicide theory. Rather, counsel invoked a trial strategy that experience had led them to believe would be beneficial to their client. Although hindsight reveals that this may not have been the most effective strategy, this Court will not second-guess trial counsel's tactical choices based upon such hindsight. *See State v. Osborne,* 130 Idaho 365, 373, 941 P.2d 337, 345 (Ct.App.1997) (decision to pursue one of two mutually inconsistent defenses was strategic, and failing to pursue other defense does not give rise to an ineffective assistance of counsel claim). In sum, Carsner has failed to show that, under the circumstances at the time, counsels' performance fell below an objective standard of reasonableness.

## C. Carsner Did Not Show That He Was Prejudiced by His Counsels' Performance

Even if Carsner had shown that his trial counsels' performance was deficient in not requesting that the jury be further instructed, he has not shown that he was prejudiced by their actions. In order to prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that counsel's deficient performance prejudiced his defense. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Aragon,* 114 Idaho at 760, 760 P.2d at 1176 (1988); *Milburn,* 130 Idaho at 653, 946 P.2d at 74 (Ct.App.1997). In other words, Carsner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Aragon, Id.* at 761, 760 P.2d at 1177, *quoting Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

In this appeal, Carsner does not assert that the jury was improperly or inadequately instructed on the law regarding voluntary manslaughter. Rather, he asserts that they should have been *further* instructed on "adequate provocation." Carsner maintains, without citing any authority, that a non-physical threat can be "adequate provocation," and the jury should have been so instructed. He then argues that the fact he was convicted of second degree murder instead of voluntary manslaughter proves he was prejudiced by trial counsels' failure to proffer a further instruction.

The district court responded to the jury's question by explaining that they had been fully instructed to the extent Idaho case law had defined the term. This instruction was accurate, as the term had not been clearly defined in case law. In fact, whether a given provocation was adequate to justify reducing a charge from second degree murder to voluntary manslaughter is a question for the fact finder to decide. *See State v. Foley* 95 Idaho 222, 506 P.2d 119 (1973). Even if Carsner's proposed jury instruction was a true statement, the district court was still not required to give it to the jury. If a jury expresses doubt or confusion on a point of law correctly and adequately covered in a given instruction, the trial court *in its discretion* may explain the given instruction or further instruct the jury, but is under no duty to do so. I.C. R. 30(b); *State v. Pinkney,* 115 Idaho 1152, 1154, 772 P.2d 1246, 1248 (Ct.App.1989). Therefore, even if Carsner's trial counsel had requested further instruction, there is no requirement that such an instruction be submitted to the jury.

Accordingly, Carsner has not shown that he was prejudiced by counsels' failure to request a further instruction on adequate provocation. The district court did not err when it dismissed this claim.

## III.

## THE DISTRICT COURT DID NOT ERR WHEN IT SUMMARILY DISPOSED OF CARSNER'S OTHER CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Standard of Review

An order for summary disposition of a post-conviction relief application under I.C. § 19–4906(c) is the procedural equivalent of summary judgment under I.R.C.P.

56. *Roman v. State,* 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct.App.1994). Summary dismissal of a post-conviction application is appropriate if there exists no genuine issue of material fact which, if resolved in the applicant's favor, would entitle him to the requested relief. If a genuine factual issue is presented, an evidentiary hearing must be conducted. *Gonzales v. State,* 120 Idaho 759, 819 P.2d 1159 (Ct.App.1991); *Hoover v. State,* 114 Idaho 145, 754 P.2d 458 (Ct.App. 1988). Therefore, on review of a summary dismissal, we must examine the record to determine whether the trial court correctly found that there existed no genuine issue of material fact and that the state was entitled to judgment as a matter of law. *Hoover,* 114 Idaho at 146, 754 P.2d at 459. In making this assessment in post-conviction cases, we do not give evidentiary value to mere conclusory allegations that are unsupported by admissible evidence. *Dunlap v. State,* 126 Idaho 901, 894 P.2d 134 (Ct.App.1995); *Drapeau v. State,* 103 Idaho 612, 651 P.2d 546 (Ct. App.1982).

### B. Analysis

The application alleged numerous additional acts that Carsner asserted resulted in the ineffective assistance of counsel. These were: a) failure to move for suppression of his statement to police; b) failure to object to instructions; c) failure to adequately investigate the crime and evidence; d) failure to move for acquittal; and e) failure to object to the introduction of unrelated bad acts and move for a mistrial or curative instruction. Carsner asserts that the district court erred when it summarily disposed of these claims because he is innocent of the killing of the decedent. He requests that this Court vacate the summary dismissal and grant him sufficient time to complete a new investigation.

Carsner filed his petition for post conviction relief on October 7, 1994. On August 5, 1996, the district court issued a notice of intent to dismiss the case for lack of prosecution. The state responded with its own motion to dismiss. Carsner responded stating that the case was not inactive, but was being investigated. This investigation consisted of interviewing some of the jurors and deposing the state's blood spatter expert. Carsner then asserted that through further investigation he hoped to discover whether blood evidence at the scene of the shooting could prove a second person was in the room, whether the tests used to find blood spatters would react to brick dye,[3] and the significance of the fact that his hands tested negative for gun shot residue.

The court held a hearing on September 9, 1996, to consider the state's motion for dismissal of the post-conviction claims. Fifteen days after the hearing, Carsner filed a 225-page volume of trial transcript and a 203-page transcript of the deposition of the state's expert witness with the court. Carsner did not provide the district court with any specific references to these transcripts, nor did he use them to highlight specific facts or to show a genuine issue of material fact. Rather, they were simply submitted to the court in total. This gesture left the district court to sort through the transcripts in search of relevant factual issues. The district court issued an opinion and order summarily dismissing a majority of Carsner's claims on October 29, 1996. The district court stated that Carsner had failed to assert any facts to support his claims of ineffective assistance other than for the jury instruction claim and the closing argument claim.

At a hearing on March 27, 1997, Carsner was informed that this partial summary judgment order was subject to modification if he were to develop facts or evidence to support any of these claims. The district court did not issue its final order dismissing the post-conviction application until October 17, 1997, over three years after the application had been filed. During this three-year period, Carsner did not offer any new facts to support his allegations, and the results of his further investigation proposed in his response to the motion to dismiss were never presented to the district court[4]. Although

---

3. Carsner's theory during trial was that the blood spatters on his clothing were actually spatters from dye used in bricks which were made at his place of employment.

4. The district court noted that an independent examination of the spatter evidence had been conducted by a defense expert, and that the results of this testing were consistent with the states's expert.

he has had every opportunity to pursue these claims by offering facts to support them, he has not done so. Rather, he relies upon the broad assertions in his pleadings and fails to establish the existence of any controverted material facts. Therefore, we affirm the district court's summary dismissal of these claims.

## IV.

## CONCLUSION

Carsner has failed to show that he received ineffective assistance of counsel. Therefore, we affirm the district court's dismissal of his claim based upon trial counsel's failure to request further jury instructions. Carsner has also failed to show that any disputed issues of fact existed on his other claims of ineffective assistance of counsel. Accordingly, we also affirm the district court's summary disposition of these claims.

Judge PERRY CONCURS and Chief Judge LANSING CONCURS in Parts I, IIA. IIC, III and in the result.