21 P.3d 483

STATE of Idaho, Plaintiff–Respondent,

v.

Michael Benjamin ELISON,
Defendant–Appellant.

No. 25451.

Supreme Court of Idaho,
Boise, December 2000 Term.

March 19, 2001.

Ronaldo A. Coulter, State App. Public Defender, Boise, for appellant. Richard J. Hansen argued.

Hon. Alan G. Lance, Attorney General, Boise, for respondent. T. Paul Krueger, II argued.

KIDWELL, Justice.

Michael Benjamin Elison appeals from the judgment of conviction entered pursuant to a jury verdict for the crime of involuntary manslaughter, pursuant to I.C. § 18–4006(2).

## I.

### FACTS AND PROCEDURAL HISTORY

In September of 1997, Michael Benjamin Elison was living in Filer, Idaho with his girlfriend, Jennifer Silver, and her two infant children. Silver's oldest child, Zachary, was

twenty-two months old at the time; Cory, her other son, was eleven months old.

On September 13, 1997, Elison was watching the children while Silver was at work. At approximately 11:30 p.m., Elison called Silver at work and informed her that Zachary had fallen down the stairs and had been taken to the emergency room. Zachary suffered from a subdural hemorrhage in his brain. Zachary was transferred to St. Luke's Hospital and remained there for approximately five days before he was released. Zachary suffered from nausea and dehydration after his release and consequently was brought back to the emergency room at Saint Benedict's Hospital both on September 21 and September 24, 1997.

On September 28, 1997, Elison was again watching the children while Silver worked. At approximately 9:00 p.m., Silver again received a call at work from Elison. Elison told Silver that Zachary had fallen off the couch, suffered from a seizure and stopped breathing. Zachary was initially brought to Saint Benedict's emergency room, but was transferred by Life Flight to St. Luke's Hospital in Boise. Zachary did not recover from his injuries and died on September 29, 1997.

A criminal complaint filed on December 17, 1997, charged Michael Elison with the crime of involuntary manslaughter stemming from the death of Zachary Nolan. An arrest warrant was issued on that same day. On December 18, 1997, Detective James Baker of the Jerome City Police Department flew to Osceola, Florida, to execute the arrest warrant. Elison was arrested on that day and was questioned by Detective Baker and Detective Dan Weis of the Osceola County Sheriff's Department. During the course of the taped interview, Elison admitted that he shook Zachary on September 13 and on September 28; he also admitted that he was frustrated because of money problems and because he was having a difficult time finding and keeping a job. Elison also admitted that he had been untruthful about the sequence of events that occurred on September 13 and 28.

An information was filed on February 27, 1998, charging Elison with involuntary manslaughter "by inflicting physical abuse by shaking Zachary Nolan, from which he died." On March 11, 1998, the state filed an amended information. The amended information provided notice of intent to seek an enhanced penalty based on the infliction of great bodily injury.

Defense counsel moved to suppress the taped confession, arguing that the arrest warrant should not have been issued as the written affidavit was insufficient to establish probable cause for the arrest. The district court judge denied the motion, finding the affidavit to be sufficient and the statements to have been knowingly and voluntarily made.

A trial commenced on November 30, 1998. At the trial, testimony was heard from various physicians, including: Dr. Fairman, the emergency room physician who attended Zachary; Dr. Pressman, a pediatric opthamologist; and Dr. Bettis, a pediatric neurologist. Dr. Fairman testified that when he examined Zachary, there were no signs of external trauma and that the severe state of cardiac arrest Zachary suffered would not normally be caused by a seizure. Both Dr. Pressman and Dr. Bettis testified that the symptoms surrounding Zachary's death were consistent with shaken baby syndrome.

Dr. Frank Roberts, a pathologist, performed an autopsy on Zachary. Dr. Roberts reported that based on the findings made as a result of the autopsy, Zachary's death appeared to be a classic case of shaken baby syndrome.

The defense presented testimony from Dr. Cantu, who testified that although some features of the case were consistent with shaken baby syndrome, he did not accept that as the most probable diagnosis. The defense also attempted to establish that Jennifer Silver, the mother of Zachary, may have abused Zachary and could possibly have been the person responsible for his death.

During the trial, the defense argued that a *Holder* instruction should be given to the jury. In spite of the defendant's position that only circumstantial evidence existed of the defendant's guilt, the court did not give a *Holder* instruction.

At the conclusion of the trial, the jury returned a verdict, finding the defendant guilty of involuntary manslaughter. The court subsequently addressed the instruction regarding the sentencing enhancement. The defense objected to this instruction, arguing that a sentencing enhancement for inflicting serious bodily injury was inappropriate because the defendant had been convicted of involuntary manslaughter, a crime that includes death (and therefore serious bodily injury) as an element. The court declined to make a ruling on this issue, opting instead to turn the matter over to the jury with written instructions and a bifurcated verdict form. The jury found that the sentencing enhancement was applicable to Elison.

A sentencing hearing was held on February 1, 1999. The defense reasserted its objection to the application of the sentencing enhancement. The district court rejected the defendant's argument, pointing to the fact that "great bodily injury" was not found in the charging language of the state, nor was it found in the jury instructions on involuntary manslaughter provided to the jury. The judge sentenced Elison to ten years on the underlying crime of involuntary manslaughter, plus five years on the I.C. § 19–2520B enhancement, resulting in a unified sentence of fifteen years. The sentence was comprised of a minimum fixed period of confinement of six years, followed by an indeterminate period of custody of nine years, not to exceed 15 years. Elison filed a timely notice of appeal.

## II.

## ANALYSIS

### A. THE DISTRICT COURT DID NOT COMMIT REVERSIBLE ERROR WHEN IT DENIED THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE BASED ON A SUFFICIENT SHOWING OF PROBABLE CAUSE.

#### Standard of Review

■ When reviewing a trial court's disposition of a motion to suppress evidence, this Court "defer[s] to factual findings of the trial court unless they are clearly erroneous, but

[ ] give[s] free review to the trial court's determination as to whether, based on those facts, constitutional standards have been met." *State v. Coma,* 133 Idaho 29, 31, 981 P.2d 754, 756 (1999); *State v. Medley,* 127 Idaho 182, 185, 898 P.2d 1093, 1096 (1995).

■ When probable cause to issue a search warrant is questioned on appeal, this Court's function is to ensure that the judge had a substantial basis for concluding probable cause existed. *State v. Revenaugh,* 133 Idaho 774, 779, 992 P.2d 769, 774 (1999); *State v. Lang,* 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). Great deference is given to the judge's determination. *State v. Josephson,* 123 Idaho 790, 792, 852 P.2d 1387, 1389 (1993).

#### Analysis

■ According to Idaho Criminal Rule 4(a), "after a complaint is laid before a magistrate, the magistrate may issue a warrant for the arrest of the defendant only after making a determination that there is probable cause to believe that an offense has been committed and that the defendant committed it." I.C.R. 4(a). Other courts, while not binding on this Court, have held that the same probable cause standards apply to the issuance of both arrest warrants and search warrants. *State v. Porter,* 88 Wash.2d 512, 563 P.2d 829, 831 (1977)(noting there is "no reason to apply a different test in the issuance of a search warrant than an arrest warrant"); *see United States v. Dawkins,* 17 F.3d 399, 404 (D.C.Cir.1994)(citing *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) and *United States v. Lincoln,* 992 F.2d 356, 358 (D.C.Cir.1993)).

■ A magistrate's determination of whether probable cause exists to support the issuance of a search warrant is determined from the facts set forth in the affidavits and from recorded testimony in support of the application for the warrant. *Josephson,* 123 Idaho at 792, 852 P.2d at 1389. Hearsay information may be included in an affidavit in support of probable cause providing that there is a substantial basis for crediting the hearsay. I.C.R. 4(e); *State v. Carlson,* 134 Idaho 471, 476, 4 P.3d 1122, 1127 (Ct.App.

2000); *State v. Wengren,* 126 Idaho 662, 666, 889 P.2d 96, 100 (Ct.App.1995)(citing *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)). In Idaho, the previous rule was that multiple hearsay was permissible to establish probable cause as long as the *Aguilar* two-prong test was satisfied at each link. *State v. Alger,* 100 Idaho 675, 678, 603 P.2d 1009, 1012 (1979). Following the adoption of *Gates,* the two prongs are but factors to be considered with the whole affidavit in determining whether the magistrate had a substantial basis for finding probable cause. *Wengren,* 126 Idaho at 667, 889 P.2d at 101; *State v. Crabb,* 107 Idaho 298, 303, 688 P.2d 1203, 1208 (Ct.App.1984).

■ "Police officers are presumed to be reliable sources of information." *State v. Gomez,* 101 Idaho 802, 807, 623 P.2d 110, 115 (1980) (citing *Ventresca,* 380 U.S. at 111, 85 S.Ct. at 747, 13 L.Ed.2d 684 (1965) and *Alger,* 100 Idaho at 679, 603 P.2d at 1013). Further, "the affidavit of a law enforcement agent which does not specifically identify each source may, nonetheless, be sufficient to support probable cause if a reader would reasonably infer that the information came from other law enforcement personnel." *State v. Wilson,* 130 Idaho 213, 216, 938 P.2d 1251, 1254 (Ct.App.1997)(quoting *United States v. May,* 819 F.2d 531, 536 (5th Cir. 1987)).

■ Additionally, statements of law enforcement officers that are based upon the observations of fellow officers participating in the same investigation carry a presumption of reliability. *Alger,* 100 Idaho at 679, 603 P.2d at 1013. This presumption has been held to apply to hearsay information from "government officials who, while engaged in investigatory or regulatory responsibilities, discover evidence of possible criminal activity." *Wilson,* 130 Idaho at 216, 938 P.2d at 1254 (citing *United States v. Flynn,* 664 F.2d 1296, 1303 (5th Cir.1982)). The presumption "is based upon the belief that facts gathered in the course of an investigation are unlikely to be based upon mere speculation or tainted by personal involvement with the suspect." *Wilson,* 130 Idaho at 216, 938 P.2d at 1254 (citing *United States v. Reed,* 700 F.2d 638, 642 (11th Cir.1983)).

In this case, an affidavit was sworn by Detective James Baker of the Jerome Police Department on December 17, 1997. The affidavit recited the events surrounding the death of Zachary, including information about emergency personnel summoned by Elison on September 28, 1997, and the situation encountered by the emergency personnel when they arrived to assist Zachary. The affidavit also described events leading up to Zachary's death as provided by both Elison and Jennifer Silver.

Detective Baker attended an autopsy performed on Zachary and the results from the autopsy were conveyed. Specifically, the affidavit noted the observations by Dr. Roberts and Dr. Claasan, including the fact that two subdural hematomas existed. The most recent subdural hematoma appeared to be directly linked to the child's death. No other significant trauma was observed to account for the closed head injuries. Further, it is significant that the child's attending physician, Dr. Bettis, observed retinal hemorrhages consistent with shaken baby syndrome which were later confirmed.

The district court judge in this case noted that under *Gates,* a totality of the circumstances approach that emphasizes factual and practical considerations of everyday life is appropriate. He determined that the majority of the disputed affidavit could be thrown out and there would still be sufficient probable cause that a crime was committed and the defendant committed the crime. The information concerning the autopsy and opinions of the two pathologists, as well as the information that Elison was the only person with the child when the child required emergency medical care, met the requisite level of substantial evidence. The judge noted that the standard requested by the defendant was unreasonably high and would unduly burden the warrant process, resulting in the denial of warrants in a situation where they are appropriate.

Detective Baker specifically named the physicians upon whose opinion he relied and because he attended the autopsy, was personally present when several of the cited opinions were formed. Additionally, information acquired through personal interviews with Elison established that he was the only

person alone with Zachary when the injuries which caused Zachary's death were inflicted. Detective Baker was actively involved in the investigation from the beginning, and thus learned a majority of the information first-hand. Therefore, based on the totality of the circumstances, the affidavit was sufficient to provide probable cause to believe Elison committed the crime.

Consequently, the district court correctly denied Elison's motion to suppress and the taped statements were properly admitted into evidence.

## B. THE COURT DECLINES TO ADDRESS WHETHER TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL.

### Standard of Review

In order to establish ineffective assistance of counsel, a defendant must satisfy the two-prong test first set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Gibson v. State,* 110 Idaho 631, 634, 718 P.2d 283, 286 (1986). The defendant must show both deficient performance and resulting prejudice. *State v. Hairston,* 133 Idaho 496, 511, 988 P.2d 1170, 1185 (1999)(citing *Gibson,* 110 Idaho at 634, 718 P.2d at 286).

■ An objective standard is applied to determine whether counsel's performance was reasonable. *Hairston,* 133 Idaho at 511, 988 P.2d at 1185; *Aragon v. State,* 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). This Court has repeatedly stated that it will not attempt to second-guess strategic and tactical choices made by trial counsel. *State v. Porter,* 130 Idaho 772, 792, 948 P.2d 127, 147 (1997); *Aragon,* 114 Idaho at 761, 760 P.2d at 1177. An exception to this general rule exists when the decisions were made due to inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation. *Carsner v. State,* 132 Idaho 235, 240, 970 P.2d 28, 33 (Ct.App.1998).

■ Even if a defendant is able to establish deficient performance on the part of trial counsel, the defendant must also establish prejudice. *State v. Estes,* 111 Idaho 430, 434, 725 P.2d 135, 139 (1986). This can be established by showing "a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." *Aragon,* 114 Idaho at 761, 760 P.2d at 1177.

### Analysis

■ At one point during the trial while the jury was not in the room, the judge questioned the parties about jury instructions. First, the judge asked the prosecution if he was planning on proceeding on two separate theories for involuntary manslaughter—the two theories being described as the "unlawful act" theory and the "negligence" theory. The prosecutor replied that he only planned to pursue the "unlawful act" theory. Later, when the judge revisited this issue, defense counsel asserted that the prosecution had not presented adequate evidence to establish the unlawful act instruction and that the defense wanted the case submitted on the theory of negligent infliction of death based on a criminal negligence theory.

The jury was ultimately given the following instruction:

In order for the defendant to be guilty of involuntary manslaughter, the state must prove the following:

1. On or about September 28, 1997,

2. In the state of Idaho,

3. the defendant Michael B. Elison produced the death of Zachary Nolan *either*

4. While committing an ordinarily lawful act

   a. which an ordinary person would anticipate that death might occur under the circumstances, and

   b. which was committed with reckless disregard of consequences and of the rights of others.

*or*

4. while committing or attempting to commit the unlawful act of injury to a child.

The unlawful act of injury to a child is committed when a person, who having the care or custody of any child under 18 years of age, willfully causes the person or health of such child to be injured.

This Court typically does not address claims of ineffective assistance of counsel on direct appeal because the record is often not

fully developed on this issue. In this case, the record is void of any concrete information that explains trial counsel's reasons for pursuing the negligence theory.

Consequently, we decline to address the issue of ineffective assistance of counsel at this time.

## C. THE DISTRICT COURT DID NOT COMMIT REVERSIBLE ERROR WHEN IT REFUSED TO GIVE THE DEFENDANT'S REQUESTED *HOLDER* JURY INSTRUCTION.

### Standard of Review

"The question of whether a reasonable view of the evidence supports an instruction to the jury is a matter left within the discretion of the trial court." *State v. Bush*, 131 Idaho 22, 32, 951 P.2d 1249, 1259 (1997); *State v. Howley*, 128 Idaho 874, 878, 920 P.2d 391, 395 (1996). This Court exercises free review when determining "whether jury instructions fairly and adequately present the issues and state the applicable law." *State v. Humpherys*, 134 Idaho 657, 659, 8 P.3d 652, 654 (2000); *Bush*, 131 Idaho at 32, 951 P.2d at 1259.

### Analysis

Previously, Idaho law entitled a defendant to a special instruction limiting the effect of evidence when the case against the defendant was based entirely on circumstantial evidence. *State v. Holder*, 100 Idaho 129, 594 P.2d 639 (1979). However, Idaho law no longer requires such an instruction, as *Holder* was recently overruled. *Humpherys*, 134 Idaho at 659, 8 P.3d at 654. For this reason, the district court did not err by refusing to give a *Holder* instruction.

## D. THE DISTRICT COURT ERRED BY APPLYING THE SENTENCING ENHANCEMENT FOR INFLICTION OF GREAT BODILY INJURY WHEN THE UNDERLYING CRIME WAS INVOLUNTARY MANSLAUGHTER WHICH INCLUDES DEATH AS AN ELEMENT.

### Standard of Review

This Court exercises free review over legal questions presented by the construction and application of a statute. *City of Sun Valley v. Sun Valley Co.*, 128 Idaho 219, 221, 912 P.2d 106, 108 (1996).

### Analysis

The applicable portion of the sentencing enhancement statute at issue in this case, I.C. § 19–2520B, reads as follows:

(1) Any person who inflicts great bodily injury, and the injury was either intended or the act causing the injury was done with a reckless disregard for the safety of another person, on any person, other than an accomplice, in the commission or attempted commission of a felony or conspiracy to commit such a felony shall be sentenced to an extended term sentence. The extended term of imprisonment authorized in this section shall be computed by increasing the maximum sentence authorized for the crime for which the person was convicted by twenty (20) years. *A term of imprisonment shall be extended as provided in this section unless infliction of great bodily injury is an element of the offense of which he is found guilty.*

(2) As used in this section, "great bodily injury" means a significant or substantial physical injury.

I.C. § 19–2520B (emphasis added).

If statutory language is clear and unambiguous, statutory construction is unnecessary and the court need merely apply the statute. *Kootenai Electric Coop., Inc. v. Washington Water Power Co.*, 127 Idaho 432, 435, 901 P.2d 1333, 1336 (1995). Legislative history and extrinsic evidence should not be used to alter the clearly expressed intent of the legislature. *Sun Valley*, 123 Idaho at 667, 851 P.2d at 963.

Whether "great bodily injury" is an element of the underlying offense of involuntary manslaughter, in the context presented in this case, appears to be an issue of first impression before this Court. Defense counsel first objected to the application of the

sentencing enhancement statute at the preliminary hearing. The trial judge ruled that he was going to allow the amended information, comparing the statute to both the firearms/deadly weapons enhancement statute, I.C. § 19–2520, and the persistent violator statute, found in I.C. § 19–2514. He remarked, "If a crime is committed in a fashion that allows the enhancer or enhancement to be available, in effect, it is a different offense; that's the practical effect of it."

The sentencing enhancement applicability was raised several other times, but was not discussed in depth again until the sentencing hearing. During the sentencing hearing, the judge again ruled that the enhancement applied. The ruling was based on the fact that the charging language by the state and the jury instructions did not include language referring to "great bodily injury." The court also referenced the similarities between I.C. § 19–2520 and § 19–2520B.

In spite of the fact that the jury instructions and the charging language in this case did not utilize the phrase, "great bodily injury," Elison could not have produced the death of or killed Zachary Nolan without inflicting great bodily injury. Consequently, it would be incongruous to hold that serious bodily injury is not an element of involuntary manslaughter.

Further, the district court erred in comparing the statute at issue in this case, I.C. § 19–2520B, with the statute that refers to "use of firearm or deadly weapon," I.C. § 19–2520. Idaho Code § 19–2520 concludes with the sentence, "This section shall apply even in those cases where the use of a firearm is an element of the offense." I.C. § 19–2520. Conversely, the enhancer for "infliction of great bodily injury" specifically states, "A term of imprisonment shall be extended as provided in this section unless infliction of great bodily injury is an element of the offense for which he is found guilty." I.C. § 19–2520B. The language found in I.C. § 19–2520B indicates that the legislature did not intend for the elements constituting a crime to be used a second time to impose a harsher sentence on a defendant. Consequently, the firearm/deadly weapon statute should not be analogized to the statute referring to "great bodily injury."

Because the district court erred when it applied I.C. § 19–2520B to Elison's involuntary manslaughter conviction, the district court's decision to apply the sentencing enhancement is reversed and the case is remanded to the district court for resentencing consistent with this opinion.

E. ELISON WAS NOT DENIED HIS RIGHT TO DUE PROCESS WHEN THE DISTRICT COURT DID NOT SUBMIT AN ELEMENT OF THE SENTENCING ENHANCEMENT TO THE JURY BASED ON THE COURT'S DETERMINATION THAT THE ELEMENT HAD ALREADY BEEN ESTABLISHED BY THE JURY'S GUILTY VERDICT ON INVOLUNTARY MANSLAUGHTER.

As previously discussed, we find that the sentencing enhancement for infliction of great bodily injury is not applicable to the crime of involuntary manslaughter. Consequently, further examination of the application of the sentencing enhancement provision is unnecessary.

### III.

### CONCLUSION

The district court properly denied Elison's motion to suppress because sufficient probable cause existed for the court to issue an arrest warrant. Additionally, the district court's decision to deny the *Holder* instruction was appropriate since *Holder* is no longer the law in Idaho. Due to a lack of information in the record explaining trial counsel's actions, this Court will not address the issue of whether trial counsel rendered ineffective assistance of counsel. Finally, the district court erred in applying the sentencing enhancement for "infliction of great bodily injury" when the defendant was convicted of involuntary manslaughter, a crime in which "the infliction of great bodily injury" is necessarily an included element. This case is remanded for sentencing consistent with this opinion.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, and BURDICK, pro tem concur.