834 P.2d 328

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Mark Hugh THORNTON, Defendant–Appellant.**

No. 19338.

Court of Appeals of Idaho.

July 10, 1992.

Lassaw & Little, Boise, for appellant. William E. Little argued.

Larry J. EchoHawk, Atty. Gen., and Michael A. Henderson, Deputy Atty. Gen., argued, Boise, for respondent.

SILAK, Judge.

A jury found Mark Thornton guilty of two counts of forgery, I.C. § 18–3601, both felonies. Subsequently, Thornton moved for a new trial pursuant to I.C.R. 34, claiming that he had been denied a fair trial because of ineffective assistance by his trial counsel. After the district court denied Thornton's motion for a new trial, Thornton appealed. For the reasons explained below, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On the afternoon of January 23, 1990, two people in a small, light colored truck drove up to the drive-through window of a bank in Boise. The passenger in the truck handed the driver a check which was then presented to the teller to be cashed. Along with the check the passenger tendered a California photo identification card bearing the photo and signature of Kevin Williams. The check was made out to Kevin Williams in the amount of $275 and drawn on the account of Blake Hart. Noting that the person in the I.D. card photo appeared to be smaller than the passenger in the truck, the teller compared the signature on the I.D. card to the endorsement on the back of the check. The teller found the signatures to be a good comparison, and, considering that photos are not always reliable because people often gain or lose weight and change appearance, the teller cashed the check for the truck passenger.

The next day, January 24, 1990, near 5 p.m., a similar event took place at a different branch of the same bank in Boise. Someone drove up to the drive-through window of the bank and presented a check to be cashed by the teller. Again, the check was made payable to Kevin Williams from the account of Blake Hart, this time for $300. The teller noticed that the person presenting the check was driving a small, older model, yellow or green pickup. The driver also presented the teller with the California photo identification card of Kevin Williams. The teller noted that the person in the I.D. card appeared to be thinner than the person driving the truck; however, upon comparison, she determined that the endorsement on the check closely matched the signature on the I.D. card. Considering that people's weight and appearance often change over time, the second teller also concluded that the signatures and appearance were similar enough, and she cashed the check.

About two weeks later, Blake Hart was paying some bills when he realized that there were two checks missing from his checkbook. He immediately reported the missing checks to his bank, which was the same bank where the checks had been cashed. Based on descriptions given by the two tellers who had cashed the checks, investigators identified the suspect as being a large black male who had an older model, small, pale green or yellow pickup. When Hart was asked whether he knew any large black males who drove a small, pale green or yellow truck, he gave police Thornton's name. Later, the two tellers were separately shown photo lineups, from which they each positively identified Thornton as the person who had presented the forged checks to be cashed.

Thornton was arrested in March, 1990, and charged with two felony counts of forgery. At trial, the state presented evidence showing that in January, 1990, Thornton owned an older model, small, pale green Datsun pickup; that he worked and lived in the vicinity of the two bank offices where the checks were cashed; that he was not working at the time the checks were cashed; and that he had been an acquaintance of Hart's for about two years. The state also introduced testimony from the two bank tellers, who positively identified Thornton in court as being the person who presented the forged checks. Both tellers also testified that they had separately been shown a photo lineup by a Boise police detective, at which time they each positively identified Thornton as the person who had presented the checks drawn on Hart's account.

The state also introduced the testimony of two handwriting experts who made independent comparisons of writing samples from Thornton and the writing on the two forged checks. Both experts testified that the author of the writing samples, Thornton, was the same person who wrote the forged checks.

In defense, Thornton presented an alibi witness, Todd Fisk, who testified that he had been with Thornton the afternoon of January 23, when the first check was cashed. The first check was cashed at about 2:07 p.m. on the 23rd. Fisk testified that he picked Thornton up from work at about 1 p.m. that day, and took him to the

house of one of Fisk's friends, Michael Moran, where they talked and watched sports on television until about 3:30 p.m. Both Thornton and Moran also testified that Fisk and Thornton were at Moran's house during the afternoon of the 23rd, from about 1:30 to 3:30 or 4:00 p.m.

The second check was cashed at about 4:51 p.m. on the 24th. Thornton testified that on the 24th, he was at work from about 3:15 until 4 p.m. or 4:15 p.m. He further testified that after he finished his work, he went to the restaurant next door to get a pizza. Thornton testified that he remained in the restaurant for about 20 to 25 minutes waiting for the pizza and talking to the employees, after which he walked home with the pizza, a distance of about eight blocks. Thornton and Fisk both testified that Thornton could not have driven his Datsun pickup on the 23rd or the 24th because it was not running at that time.

The case was submitted to a jury, which returned a verdict of guilty on both counts. Prior to sentencing, Thornton's present counsel was substituted for the counsel who represented him at trial. At the hearing scheduled for Thornton's sentencing, Thornton's new counsel submitted a motion for new trial pursuant to I.C.R. 34, and requested that sentencing be postponed until after the motion for new trial had been considered. The district court determined to proceed with sentencing and scheduled a subsequent hearing on the motion for new trial. Thornton was sentenced to a unified term of seven years with a mandatory minimum term of two years' confinement on each count, with the sentences to run concurrently.

Thornton's motion for new trial was based on a claim that he had been denied effective assistance of counsel at trial. Thornton alleged that his trial counsel failed to adequately investigate and pursue possible defenses by: (1) failing to obtain the original or a copy of the I.D. card of Kevin Williams which was used to pass the forged checks; (2) failing to obtain another expert's opinion comparing Thornton's writing samples with the writing on the forged checks; and (3) failing to procure Kevin Williams, the true owner of the I.D. card, as a witness at trial. Thornton argued that had his trial counsel obtained this evidence and presented it in court, the jury might have concluded that Williams himself forged the stolen checks, not Thornton. Prior to ruling on the motion, the district court allowed Thornton time to obtain Kevin Williams's I.D. card from California authorities and submit it to the court as evidence that had the I.D. card been presented to the jury, Thornton probably would not have been convicted. After receiving and considering Thornton's brief in support of his motion, arguments from counsel, and the photocopies of Williams's I.D. card, the district court denied the motion for new trial, concluding that "justice would not be served by setting aside [the] verdicts based upon the evidence presented." Thornton appealed the district court's denial of his motion, and was subsequently released on bond pending the outcome of this appeal.

## ISSUE AND STANDARD OF REVIEW

■ The issue presented by this appeal is whether the district court abused its discretion by denying Thornton's motion for a new trial. A trial court may grant a new trial "if required in the interest of justice...." I.C.R. 34. "Whether the interest of justice requires a new trial under the circumstances of a particular case is directed to the sound discretion of the trial court; and the trial court's decision thereon will not be disturbed absent an abuse of that discretion." *State v. Scroggins*, 110 Idaho 380, 384, 716 P.2d 1152, 1156 (1985) (citing *State v. Olin*, 103 Idaho 391, 399, 648 P.2d 203, 211 (1982), *cert. denied*, 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986)). In determining whether a district court has properly exercised its discretion, we conduct a multi-tiered inquiry to consider: (1) whether the trial court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of rea-

son. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

## ANALYSIS

Thornton's motion for new trial was based on his claim that he was denied effective assistance of counsel at trial. The trial court denied Thornton's motion, concluding he failed to show that he had received ineffective assistance of counsel. Therefore, we must determine whether the trial court properly applied the legal standards which govern a claim of ineffective assistance of counsel.

 In order to prevail on a claim of ineffective assistance of counsel, the defendant must show: (1) that his counsel's representation was deficient; and (2) that his counsel's deficient performance prejudiced him. *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Aragon v. State*, 114 Idaho 758, 760 P.2d 1174 (1988); and *Young v. State*, 115 Idaho 52, 764 P.2d 129 (Ct.App.1988)). In determining the first question, whether counsel's performance was deficient, the defendant must overcome a strong presumption that counsel's performance was within the "wide range of professional assistance," and show that his attorney's representation fell below an objective standard of reasonableness. *Aragon*, 114 Idaho at 760, 760 P.2d at 1176 (quoting *Strickland, supra*).

 With respect to the second prong, prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Prejudice is presumed in some instances, for example, where the defendant is denied counsel altogether, or where counsel represents conflicting interests. Generally, however, the defendant must affirmatively prove prejudice." *Aragon*, 114 Idaho at 761, 760 P.2d at 1177 (quoting *Strickland, supra*). Because there are no circumstances which raise a presumption of prejudice in this case, the burden is on Thornton to show that he was prejudiced by his counsel's deficient performance. In deter-

mining whether Thornton has made this showing, we consider "the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2069.

We note, initially, as we did in the recent case of *State v. Roles*, 122 Idaho 138, 832 P.2d 311 (Ct.App.1992), that this appeal does not arise from a post-conviction relief proceeding, nor was an evidentiary hearing held or an affidavit obtained regarding the theories, tactics, or strategies of Thornton's trial counsel. It is, therefore, very difficult to review the performance of Thornton's trial counsel based on the record before us which consists only of the trial transcript and the I.D. card of Kevin Williams submitted as evidence in support of the motion for new trial. However, we will address each of the sub-issues relating to the alleged ineffective assistance of counsel in turn.

 1. *Failure to Obtain and Introduce at Trial the I.D. Card of Kevin Williams.* In his brief, Thornton argues that:

> [H]ad the ID card been produced and it was discovered that the signature of Kevin Williams as signed on the Id [sic] card matched perfectly with the endorsement on the forged checks, a different result would have been expected in regard to the State's allegations that Mark Thornton forged those checks.

Williams's I.D. card was obtained by Thornton's current counsel and submitted to the district court as evidence in support of the motion for new trial. The district court, after receiving and considering this evidence, concluded the following:

> There is nothing about the identification card that leads to the conclusion that a different result probably would have been obtained had the evidence been submitted to the jury. The card has a signature which bears a resemblance to the writing on the forged instrument. That is not remarkable. Common sense tells one that a forger would attempt to duplicate writing on an identification card that he used. Further, the photograph on the

identification card is not in and of itself exculpatory. The person shown on the card appears to be smaller than the defendant. At least one of the eyewitnesses said that was the case.

We note, in addition to the trial court's findings, that Thornton has merely presented the I.D. card and alleged that if the signature on the I.D. card and the endorsements on the forged checks are exactly the same, that would be evidence that Williams was the one who forged the checks. Thornton has failed to present any additional evidence from handwriting experts comparing the signature on the I.D. card to the endorsements on the forged checks to show that they were both, in fact, written by Williams. In the absence of such evidence, the trial judge viewed the signatures himself, and concluded that while the signatures bear a resemblance, there is nothing about the identification card that leads to the conclusion that Williams was the forger of the checks, rather than Thornton. We conclude, as did the trial judge, that there is nothing about the identification card itself that leads to the conclusion that a different result probably would have been obtained had the evidence been submitted to the jury.

With respect to the I.D. card's photo of Williams, we again agree with the district court, and further note that both eyewitnesses—the tellers—testified that at the time the forged checks were presented to them to be cashed, they looked at the I.D. card and the person presenting the checks, and both tellers noticed that the person in the I.D. card appeared to be smaller or thinner than the person presenting the checks. Thus, the I.D. card actually corroborates the testimony of the tellers. When the tellers gave their testimony at trial they did not have the I.D. card to look at, nor had they seen the card since it was used to pass the forged checks nearly a year earlier. Based solely on their independent recollections of what they had perceived at the time the checks and the I.D. card were presented to them, both tellers testified that the person portrayed in the I.D. card appeared to be smaller or thinner than the person who presented the checks

to be cashed. Since the time of the tellers' testimony, Thornton's counsel procured copies of Williams's I.D. card, which shows that Williams does indeed appear to be smaller or thinner than Thornton, as he was pictured in the photo line-up. Therefore, had the I.D. card been produced at trial, it would have served to corroborate the testimony of the tellers that the person who presented the checks was, in fact, larger than the person appearing on the I.D. card. Because Thornton has failed to show that had his counsel produced Williams's I.D. card at trial he probably would not have been convicted of the forgeries, he has failed to show that he was prejudiced by his counsel's performance.

■ *2. Failure to Obtain Another Expert's Opinion Comparing Thornton's Writing Samples to the Writing on the Forged Checks.* At trial, two police detectives who were trained and experienced in the field of handwriting analysis testified regarding the authorship of the forged checks. Both officers independently compared the handwriting on the forged checks to the writing samples submitted by Thornton, and both reached the conclusion that Thornton was the author of the forged checks.

Thornton's current counsel argues that "it appears from the Defendant's statements made to counsel that no attempt was made to obtain any independent analysis of the hand writing on the forged checks in relation to that of the Defendant." Thornton's argument seems to be that had his trial counsel sought the independent opinion of a different handwriting expert, that expert might have concluded that Thornton was not the author of the forged checks.

Thornton has failed to produce any evidence that had his trial counsel employed one or more other experts to analyze the writings, they would have reached a different conclusion than the experts who testified. Thornton might have done this by procuring the affidavit of an expert who had examined the writings subsequent to trial and reached a different conclusion. In its memorandum decision denying Thorn-

ton's motion for new trial, the district court stated:

> The defense challenges the prior defense attorney's failure to obtain another handwriting expert. That still has not been done. It is speculation to assume that another expert would say the handwriting was not that of the defendant but was that of another person.

We find no error in this reasoning, and hold that Thornton has failed to show prejudice by his counsel's failure to obtain the opinion of another handwriting expert.

■ 3. *Failure to Obtain the Presence of Kevin Williams at Trial.* Thornton has asserted that Kevin Williams was an integral witness in the case and that his trial counsel failed to adequately prepare his defense because "[n]o attempt was ever made to contact or secure Kevin Williams as a witness. The State's witnesses were never confronted with the presence of Kevin Williams...." However, in support of his motion for a new trial, Thornton did not produce any facts or evidence as to what Williams's testimony might have been. The record is void of any evidence to show how the testimony or identifications of the state's witnesses might have changed had they been confronted with the presence of Kevin Williams. Thornton has failed to show that his counsel's failure to secure the presence of Williams at trial prejudiced his defense, and that he was thereby denied effective assistance of counsel.

■ The record reflects that the district court carefully considered the arguments presented by Thornton in support of his motion for new trial. After considering each of Thornton's arguments, the district court concluded that Thornton had failed to show that he was prejudiced by deficient performance of his counsel. The court then reviewed the evidence in support of Thornton's conviction, and concluded that "[a]bsent a showing, rather than speculation, that there is evidence that exonerates the defendant justice would not be served by setting aside verdicts based upon the evidence presented." Based on our review of the record, we can find no error in this conclusion.

## CONCLUSION

The record shows that the district court perceived and treated Thornton's motion for new trial as a matter within its discretion. The record further shows that the district court acted within the boundaries of its discretion and consistently with the legal standards applicable to the determination regarding Thornton's claim of ineffective assistance of counsel, and that the court reached its decision by an exercise of reason. The record in this case supports the district court's conclusion that the interest of justice does not require that Thornton be granted a new trial. Therefore, the district court's denial of Thornton's motion for new trial is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.