**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37210**

| | | |
|---|---|---|
| **JAMES FLOYD,** | ) | **2012 Unpublished Opinion No. 539** |
| | ) | |
| Petitioner-Appellant, | ) | **Filed: June 27, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Respondent. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County. Hon. Michael E. Wetherell, District Judge.

Judgment summarily dismissing petition for post-conviction relief, affirmed in part and reversed in part, and case remanded.

Sara B. Thomas, State Appellate Public Defender; Erik R. Lehtinen, Chief, Appellate Unit, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

James Floyd appeals from the summary dismissal of his petition for post-conviction relief. He asserts that an evidentiary hearing was required to resolve material issues of fact. We affirm in part, reverse in part, and remand for further proceedings.

**I.**

**BACKGROUND**

Floyd was charged with possession of a controlled substance after the police found methamphetamine in his sock. He filed a motion to suppress this evidence, which the district court denied. He then entered a conditional plea of guilty, reserving his right to appeal the denial of his suppression motion. Floyd was sentenced to a unified five-year term with one and one-half years fixed. His sentence was suspended, however, and he was placed on probation. In 2006, the court revoked his probation and executed his sentence after Floyd violated the terms of

1

his probation. The district court retained jurisdiction and, in 2007, suspended the remainder of Floyd's sentence and placed him on probation a second time. In 2008, the court again revoked Floyd's probation after Floyd admitted to violating the terms of his probation. His sentence was executed, and he was given credit for 232 days of incarceration previously served. In an unpublished opinion, this Court affirmed Floyd's judgment of conviction, holding the district court did not err in denying Floyd's motion to suppress evidence. *State v. Floyd*, Docket No. 34114 (Ct. App. Mar. 20, 2009).

While that appeal was pending, Floyd filed a pro se petition for post-conviction relief in which he raised various claims, including a claim that he was not given all the credit for time served to which we was entitled and a claim that counsel was ineffective for failing to file a notice of appeal from the revocation of his probation. Counsel was appointed for Floyd, and his counsel filed an amended petition that included a claim that his trial attorney was ineffective for failing to request an evidentiary hearing on Floyd's suppression motion. After providing notice of its intent to dismiss, the district court summarily dismissed all the claims in Floyd's petition and amended petition. Floyd appeals.

## II.

## ANALYSIS

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative. Summary dismissal of a petition is the procedural equivalent of summary judgment under Idaho Rule of Civil Procedure 56. "A claim for post-conviction relief will be subject to summary dismissal . . . if the applicant has not presented evidence making a prima facie case as to each essential element of the claims upon which the applicant bears the burden of proof." *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009) (quoting *Berg v. State*, 131 Idaho 517, 518, 960 P.2d 738, 739 (1998)). If there exists a genuine issue of material fact that, if resolved in the petitioner's favor, would entitle the petitioner to the requested relief, an evidentiary hearing must be conducted. *State v. Payne*, 146 Idaho 548, 561, 199 P.3d 123, 136 (2008); *Goodwin v. State*, 138 Idaho 269, 272, 61 P.3d 626, 629 (Ct. App. 2002). As the trial court rather than a jury will be the trier of fact in the event of an evidentiary hearing, summary dismissal is appropriate where the evidentiary facts are not disputed, despite the possibility of conflicting inferences to be drawn from the facts, for the court alone will be responsible for resolving the conflict between those

inferences. *State v. Yakovac*, 145 Idaho 437, 444, 180 P.3d 476, 483 (2008); *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). That is, the judge in a post-conviction action is not constrained to draw inferences in favor of the party opposing the motion for summary disposition, but rather is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts. *Hayes*, 146 Idaho at 355, 195 P.3d at 714. "[W]hen reviewing a district court's order of summary dismissal in a post-conviction relief proceeding, we apply the same standard as that applied by the district court." *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010).

To prevail on an ineffective assistance of counsel claim, the petitioner must show that his defense attorney's performance was deficient, and ordinarily the petitioner must also show that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 694; *Aragon*, 114 Idaho at 761, 760 P.2d at 1177.

## A.    Lack of Evidentiary Hearing on Suppression Motion

Floyd asserts that summary dismissal was erroneous because he presented evidence showing his trial attorney performed deficiently by not requesting an evidentiary hearing on his suppression motion, and that he was prejudiced thereby because he was unable to testify before the court and to cross-examine the officers. According to Floyd, the reasonable suspicion justifying his detention dissipated before the officers frisked him, when another officer advised them that Floyd was not the suspect the officers believed him to be when they stopped him. Floyd presented this contention to the district court in an affidavit supporting his suppression motion, but he asserts his attorney was deficient in not obtaining an evidentiary hearing at which he could have testified and could have elicited the officers' testimony on this point.

We find no error in the summary dismissal of the claim. Even if we assume that counsel performed deficiently by failing to request an evidentiary hearing (instead of presuming he made a permissible tactical decision to forgo the hearing in order to prevent cross-examination of

3

Floyd and to prevent the officers from bolstering their own version of events), Floyd has not demonstrated that he was prejudiced thereby.[1]  On appeal, Floyd asserts that he was prejudiced because "competent counsel would have sought to have the officers confirm" that they were informed that Floyd was not the person they were looking for before they frisked him, and "if the officers attempted to lie about this fact, it is something that competent counsel would have sought to cross-examine the officers on in an effort to ferret out their perjury."  However, Floyd has presented no affidavits from the officers or other evidence indicating how the officers would have testified.  The notion that the officers would have corroborated Floyd's version of events or that he would have been able to present any information not already made available to the court in his affidavit is entirely speculative.  As stated by the district court:

> If given the chance, Petitioner argues that he would have had his attorney cross-examine [the officers]; and that he would have "expose[d] the weakness of the officer's [sic] testimonies" and "show[n] the credibility gap of the officers." However, the Petitioner has not pointed to any facts which would constitute an alleged weakness or credibility gap.  The only allegations addressing this issue deal with Officer Griggs.  Petitioner believes that he lost his Motion to Suppress due in part to the testimony of Officer Griggs, an individual who the Petitioner feels had been his revenge-seeking nemesis since the late 1980's.  However, other than informing the Court that it can verify his assertions by looking through police files and records, Petitioner offers no proof of this story.  It is not the Court's duty to conduct investigatory research to support Petitioner's case. Petitioner's allegation is far-fetched, unsupported by admissible evidence, and frivolous.  As such, it will be dismissed.

---

[1]     Floyd contends that because "all inferences must be drawn in favor or the petitioner," this Court should not treat failure to request an evidentiary hearing as a tactical decision.  Floyd relies on this Court's statement in *Small v. State*, 132 Idaho 327, 331, 971 P.2d 1151, 1155 (Ct. App. 1998) that "the court liberally construes the facts and reasonable inferences in favor of the nonmoving party."  *See also Ricca v. State*, 124 Idaho 894, 896, 865 P.2d 985, 987 (Ct. App. 1993) ("the court will liberally construe the facts in favor of the party opposing the motion, together with all reasonable inferences to be drawn from the evidence in favor of the non-moving party").  We note, however, that in *State v. Yakovac*, 145 Idaho 437, 444, 180 P.3d 476, 483 (2008), the Idaho Supreme Court held that the judge in a post-conviction action is not constrained to draw inferences in favor of the party opposing a motion for summary disposition, but rather is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts.  *See also Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008); *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011); *Gonzales v. State*, 151 Idaho 168, 171, 254 P.3d 69, 72 (Ct. App. 2011); *Zivkovic v. State*, 150 Idaho 783, 786, 251 P.3d 611, 614 (Ct. App. 2011); *Hughes v. State*, 148 Idaho 448, 451, 224 P.3d 515, 518 (Ct. App. 2009).  As already articulated above, we apply the same standard.

Moreover, even assuming there was a history of nemesis between the Petitioner and Officer Griggs, the Court notes that the testimony of all the officers was substantially similar, all confirming and bolstering the credibility of Officer Griggs.

Floyd did not meet his burden to demonstrate a reasonable probability that, but for the attorney's deficient performance, the outcome of the suppression hearing would have been different. Therefore, Floyd's claim that counsel was ineffective for failing to request an evidentiary hearing was properly dismissed.

## B.      Failure to Appeal from the Revocation of Probation

Floyd also asserts that the district court erred by summarily dismissing his claim that counsel was ineffective for failing to appeal the revocation of his probation. The State concedes that summary dismissal was erroneous because the district court misunderstood Floyd's claim. In his petition, Floyd claimed that "Counsel failed to file an appeal with-in [sic] 42 days upon Petitioner[']s request." In an affidavit in support of the petition, Floyd elaborated by stating that after his "probation was not re-enstated [sic]" he asked his attorney to file an appeal. The district court issued a notice of intent to dismiss the claim stating, "Petitioner next alleges his counsel failed to file a timely appeal *of the underlying conviction*." (Emphasis added.) The district court concluded that because an appeal had been filed, the claim would be dismissed. In response, Floyd filed an additional affidavit in which he stated, "My allegation is that [counsel] failed to file an appeal from the probation revocation hearing." Without addressing Floyd's clarification of the issue, the district court dismissed the claim on the grounds stated in its previous notice. Because the district court erroneously perceived Floyd's claim to be a claim that counsel did not appeal his conviction, when in fact the claim was that counsel did not appeal the revocation of his probation, we agree that summary dismissal of that claim was erroneous. Accordingly, we reverse the summary dismissal of this claim and remand for further proceedings.

## C.      Credit for Time Served

Lastly, Floyd contends that the district court erroneously dismissed his claim that he is entitled to credit for 253 days of incarceration served before his probation was revoked instead of the 232 days' credit given. In support of his petition, Floyd submitted a "scratch sheet" listing various dates for which he asserts credit should have been given. In its notice of intent to dismiss this claim, the district court made the following comment: "Petitioner has not supported this claim by directing the court's attention to the record, nor has he provided any other evidence

as support of this assertion." Then the court added in a footnote, "If petitioner were to provide proper documentation and evidence of this claim, the court would be inclined to oblige." From these comments, it appears that the court may have overlooked Floyd's handwritten list of dates for which he asserts credit should have been given, which stated the number of days for each alleged segment of incarceration and the precipitating act, including the original arrest, two agents' warrants, and a bond revocation. If so, the oversight was understandable as this list was buried between copies of letters to Floyd's counsel that were attached to one of his pro se affidavits. This document sets out Floyd's calculations of credit for time served with sufficient specificity to identify at least some of the relevant documents in the criminal case file. Of course, Floyd's post-conviction counsel ought to have heeded the district court's request for specific documentation. However, the State concedes on appeal that Floyd may be entitled to some additional credit and, in order to avoid an otherwise inevitable successive petition due to post-conviction counsel's failure to properly support this claim with evidence, the State stipulates to the remand of this case for determination of credit to which Floyd may be entitled. Accordingly, we vacate the summary dismissal of this claim and remand to allow Floyd and his attorney one more opportunity to submit evidence to support this claim.[2]

---

[2]    Floyd directs our attention to various sections of the record which he contends demonstrate that he was entitled to additional time, and the State concedes as much. From our review of the record, however, we cannot determine whether Floyd is entitled to additional credit. In fact, we can identify definite periods of incarceration totaling only 227 days.

Floyd seeks credit for fourteen days of incarceration following his arrest on an agent's warrant issued on May 31, 2006 (as a result of a probation violation). However, the record indicates that Floyd was not arrested on the warrant until June 7, and that he posted bond the same day. Thus, it does not appear that Floyd was incarcerated from the period beginning May 31 or June 7 until June 20 as he contends. At most, it appears he would be entitled to credit for one day if he was incarcerated at some point on June 7 before posting bond. Similarly, Floyd contends that he is entitled to thirty-four days' credit for a period of incarceration between another arrest on January 18, 2008, and release on February 20. However, while the record indicates that an agent's arrest warrant was issued on January 18, it also indicates that Floyd was not arrested on the warrant until February 1 (the same day that a bench warrant was issued for his arrest). Assuming Floyd was released on February 20, as he contends, he would be entitled to twenty days' credit.

Next, Floyd contends that he is entitled to 177 days for his incarceration from October 2006 to April 2007. On October 18, 2006, the district court revoked probation and "ORDERED that [Floyd's] sentence is to commence on October 24, 2006." The district court retained jurisdiction and eventually placed Floyd on probation, giving him credit for 176 days. Floyd contends that if he was taken into custody on October 18, the date of the court order, as opposed

6

### III.

### CONCLUSION

Floyd did not demonstrate that he was prejudiced by counsel's alleged failure to request an evidentiary hearing on his suppression motion. Therefore, the summary dismissal of that claim is affirmed. The summary dismissal of Floyd's claim regarding counsel's failure to appeal the revocation of his probation is vacated and remanded because the court did not address the claim presented by Floyd. Lastly, we vacate the summary dismissal of Floyd's claim for additional credit for time served, and on remand Floyd should be given the opportunity with the assistance of counsel to present evidence in support of his claim.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**

---

to October 24, the date the sentence was ordered to be commenced, he would be entitled to additional credit. However, while Floyd contends that "his assertion that he is entitled to credit for 177 days is infinitely reasonable," he has not asserted, much less provided any evidence, that he commenced the rider program before October 24. In fact, Floyd acknowledges that, based on the record, it is just as likely that he began the program on October 24, in which case he would be entitled to only 175 days' credit rather than the 176 days' credit actually given.

The last two periods of incarceration are less clear. Floyd contends that he was incarcerated for two days following his original arrest. He asserts that his claim is corroborated by grand jury testimony. We are not in possession of those transcripts, however, and thus are unable to confirm Floyd's assertions. Although we have taken judicial notice of the record from Floyd's direct appeal, the transcripts from the grand jury testimony were exhibits in Floyd's direct appeal and thus were returned to the district court after remittitur was issued. Consequently, they are not included in the appellate record. Finally, Floyd contends that he is entitled to twenty-six days' credit for his incarceration between April 24 and May 19, 2008. A sheriff's report filed with the district court indicates that Floyd was incarcerated for thirty days from March 25 until April 24, 2008. If we accept the sheriff's affidavit, Floyd would be entitled to thirty days' credit. However, on April 21 the court entered an order of temporary commitment ordering the sheriff to take the defendant into custody until May 19. We are unable to reconcile these documents.