**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49730**

| | | |
|---|---|---|
| In the Matter of:  John Doe I and Jane Doe I, Children Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) | **Filed:  October 27, 2022** |
| Petitioner-Respondent, | ) ) ) | **Melanie Gagnepain, Clerk** |
| v. | ) ) | **THIS IS AN UNPUBLISHED** |
| JANE DOE (2022-21), | ) ) ) | **OPINION AND SHALL NOT BE CITED AS AUTHORITY** |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Second Judicial District, State of Idaho, Idaho County.  Hon. Victoria Olds, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

McFarland Law Offices, LLC; Joanna M. McFarland, Lewiston, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Briana R. Allen, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights. Doe alleges substantial evidence does not support the magistrate court's findings that Doe neglected the minor children and that termination of her parental rights is in the children's best interests.  Doe also argues substantial evidence does not support the magistrate court's findings that the minor children were not Indian children under the Indian Children Welfare Act (ICWA) and that the Idaho Department of Health and Welfare (Department) did not make reasonable efforts at reunification.  Finally, Doe asserts that her counsel provided ineffective assistance during the termination trial.  Because substantial evidence supports the magistrate court's findings, the

1

magistrate court did not err. The judgment terminating Doe's parental rights to the minor children is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the biological mother of W.C. and N.R. On June 28, 2020, the minor children came into care because of concern of lack of supervision and a report that W.C. had sexually abused N.R. The Department was additionally concerned about the living conditions of the home and a report that Doe's husband, a registered sex-offender but not the father of W.C. or N.R., had previously sexually abused his biological daughter. The magistrate court granted the Department temporary custody of the children and ordered a case plan for Doe as part of reunification efforts.

On October 7, 2021, the State filed a petition to terminate Doe's parental rights to the children. After a three-day trial beginning on March 9, 2022, the magistrate court found Doe neglected the minor children by failing to provide them proper care and control and failing to comply with the case plan. The court also found that termination of Doe's parental rights is in the best interests of the children. Accordingly, the magistrate court entered a judgment terminating Doe's parental rights to the children.[1] Doe timely appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe*

---

[1] The children's father's parental rights were also terminated but are not at issue in this appeal.

*v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006).  Further, the magistrate court's decision must be supported by objectively supportable grounds.  *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe alleges substantial evidence does not support the magistrate court's findings that Doe neglected her children and termination of her parental rights is in the children's best interests. Additionally, Doe alleges that substantial evidence does not support the magistrate court's findings that the children are not Indian children, as defined by the ICWA, and alleges that the Department did not provide reasonable efforts at reunification.  Finally, Doe alleges her trial counsel provided ineffective assistance at the termination trial by failing to ask the magistrate court for accommodations relative to her disability and by failing to call additional witnesses.  In response, the State argues the magistrate court did not err in any of the findings Doe challenges and that Doe has failed to show trial counsel provided effective assistance during the termination trial.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child.  *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002).  This interest is protected by the Fourteenth Amendment to the United States Constitution.  *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007).  Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved.  Idaho Code § 16-2001(2).  Therefore, the requisites of due process must be met when terminating the parent-child relationship.  *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006).  Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence.  *Id*.  Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence.  *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code Section 16-2005 authorizes termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist:  (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that

3

will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## A.     The Magistrate Court Did Not Err in Finding Doe Neglected the Children

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The magistrate court found two statutory bases for terminating Doe's parental rights. First, Doe neglected the minor children by failing to provide proper care and control. Second, Doe neglected her minor children by failing to comply with the terms of her case plan. However, on appeal, Doe only challenges the magistrate court's finding of neglect by failing to provide proper parental care and control. Where a lower court makes a ruling based on two alternative grounds and only one of those grounds is challenged on appeal, the appellate court must affirm on the uncontested basis. *Rich v. State*, 159 Idaho 553, 555, 364 P.3d 254, 256 (2015). Accordingly, we affirm the magistrate court's finding of neglect on the uncontested basis that Doe neglected the minor children by failing to comply with the case plan.

## B.     Substantial Evidence Supports the Magistrate Court's Finding That Termination of Doe's Parental Rights Is in the Children's Best Interests

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the

4

child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court found that termination of Doe's parental rights is in the best interests of the children because Doe did not make significant efforts to improve her situation, including that she continued to struggle to care for her own basic needs and to achieve consistent employment and financial stability and because the children greatly improved while in foster care. These findings are supported by substantial evidence.

First, substantial evidence was presented at the termination trial that despite sustained, substantial resources, Doe failed to make meaningful efforts to improve her situation, specifically in her ability to properly and safely parent, such that the children were at risk of continued harm if returned to Doe's care. Leana Demasters, a licensed social worker who worked for the Department when the children first came into care, testified that since W.C.'s birth, the Department performed "quite a few" referrals, including at least fifteen safety assessments involving Doe and her children, the majority of which concerned lack of supervision and medical neglect. During these assessments, Demasters stated the Department provided Doe resources, including developmental disability resources, occupational therapy, and in-home services, but Doe never followed through with these resources and once the Department closed a case, Doe would not follow through with necessary services for herself or the children.

Similarly, multiple witnesses testified that Doe was provided with resources and support, yet she did not make meaningful progress in developing and advancing her parenting skills, including her ability to notice and appropriately respond to safety risks. For instance, Demasters testified that Doe believed each excuse her husband told her concerning his three convictions for sex offenses against children and, as a result, Doe struggled to understand that her husband posed a threat to the minor children.

Tricia Klement, another social worker at the Department assigned to Doe's case, testified that despite the resources the Department provided and Doe's participation in relevant case plan tasks, Klement did not see any progress in Doe's ability to recognize both unhealthy relationships

5

and individuals who posed safety risks to her and her children. Klement testified that Doe never progressed in the case plan to the point where it was safe for the minor children to have at-home visits with Doe. Klement also stated she had significant concerns about Doe's ability to protect her children in the future. Further, Klement testified that Doe's denial that her husband posed any kind of safety threat to her children raised significant concerns about Doe's ability to protect her children. Finally, despite Doe telling Klement that she was not going to have contact with her husband, Klement received reports that Doe and her husband had been seen together in the community.

Similarly, Libby Sheffler, Doe's primary caseworker beginning in August 2021, testified that, despite Doe attending multiple parenting classes and participating in five or six conversations about safety risks to her children, Doe did not gain any knowledge or insight into her children and what they might have experienced while in her care. Sheffler was never able to recommend a transition to an extended home visit during the life of the case; Doe continued to live with unsafe individuals during the course of the proceeding; and even when she lived by herself, Doe was not able to provide a safe or stable environment for her children. Sheffler also testified that, despite the minor children's significant needs, Doe expressed that she would not continue any of the services the children needed if they were returned to Doe's care. Ultimately, Sheffler's primary concern was that Doe did not recognize the safety factors that had been in place throughout the case and, as such, she believed "the likelihood that [Doe] is going to intervene and negate any safety issues in the future is very minimal."[2]

Klement and Sheffler's concerns about Doe's ability to protect the children from future harm were also reflected in Dr. Rehil-Crest's testimony. Dr. Rehil-Crest, a clinical psychologist, conducted Doe's psychological evaluation and parenting assessment, during which she assessed Doe's parenting skills, developmental knowledge, and ability and willingness to protect her children from future harm. She testified that Doe's responses to the personality tests suggested

---

[2] Sheffler testified that Doe's other child, who is not subject to this proceeding because she was not present at Doe's home when the other children were removed, was currently in Washington with Doe's husband's parents because Doe did not want the child coming into the Department's care. Sheffler explained that Washington's Department of Health and Welfare had received multiple referrals for the child, but Doe's husband's parents had been evading Washington authorities.

that she was not honest in the assessment, although Dr. Rehil-Crest acknowledged that Doe's cognitive disability may have impacted her responses. Further, Dr. Rehil-Crest testified:

> So I felt like [Doe] was displaying some clear cognitive limitations in her ability to do some basic parenting tasks. So things like being able to talk about how to determine risk or threat in different situations, she struggled with that, and given a history of a cognitive delay I felt like that was a concerning, limiting factor for her. She also reported a lot of trauma in childhood and a lot of her discussion with me revolved around her beliefs about how to assess safety. And they were not consistent with what I would consider most healthy and emotionally kind of functioning parents to be able to talk about. . . . And so my conclusions were, looking at her trauma history and her cognitive delays are likely reducing her ability to parent effectively and to be aware of safety concerns, to be able to identify them and to be able to problem solve how to remediate them.

Dr. Rehil-Crest concluded that, without intervention, Doe continued to be at risk for victimization and her minor children would be placed at continued risk.

Doe's own testimony supported the conclusion that Doe did not make meaningful improvements throughout the proceeding because she lacked the ability to recognize and respond to safety risks posed to her children and, as such, the children would face continued risks if returned to her care. Doe testified that her husband had been convicted of three sex offenses for conduct against children stemming from three separate instances with three separate victims. Moreover, his thirteen-year-old biological daughter had accused him of rape, which was, in part, the genesis of the investigation resulting in this case. However, Doe believed that her husband was a victim of the offenses because he was innocent, framed, set-up, or forced into the conduct underlying his convictions. Doe further believed that she can recognize a sex offender by how an individual looks and acts. Although Doe testified that she filed for divorce from her husband and he would not be around W.C. and N.R. going forward, Doe also stated she did not believe her husband posed a safety risk to the children. Moreover, Doe's husband had not been served with the divorce complaint prior to trial.

Similarly, Doe was aware of a report that W.C. previously sexually abused N.R. and heard testimony from N.R.'s foster mom about the fear, emotional escalation, and behavioral regression N.R. displayed when W.C. stayed overnight with N.R. at her foster placement on a respite visit. Despite that information, Doe testified that she never felt the need to protect N.R. from W.C. and did not believe N.R.'s accusation that W.C. sexually abused her. Doe testified that while she believed N.R. had been manipulated into making an accusation, her safety plan was "keeping eyes open at all times" on W.C. and N.R and ensuring they slept apart if they were returned to her care.

7

Although Doe did not think that a safety plan was needed because W.C. was not sexually active or interested, Doe also stated that if she witnessed W.C. doing something to N.R., she would remove him and "bust his ass with a belt."

Doe testified that she did not have any fault in the children being removed from her care and that she believed the Department was solely responsible for her not having custody of the children. Substantial evidence was presented to support the magistrate court's finding that despite sustained, substantial resources, Doe failed to make meaningful efforts to improve her situation, specifically in her ability to properly and safely parent, such that the children would be at risk of continued harm if returned to Doe's care.

Second, substantial evidence supports the magistrate court's finding that the children made significant improvements after being removed from Doe's care. Specific to N.R., Demasters testified that when the children came into care, N.R. had significant speech delays, swelling in her eardrums due to extensive, untreated allergies, and substantial dental issues. N.R.'s foster mom testified that when N.R. first came into care, N.R. was unstable and very abrupt, had behavioral issues, and even damaged some items in her foster home. She also testified that N.R. had speech issues, a lot of sinus issues and ear infections, dental issues, over-ate, and wet the bed. However, N.R.'s foster mom testified that N.R. is a "whole different little girl now" and "just thriving." N.R.'s foster mom explained that N.R. had been introduced to a routine and received consistent medical and dental care, and speech therapy and, as a result, her sinus issues and ear infections subsided, her dental issues were being addressed, her speech improved tremendously, her over-eating stopped, her behavioral issues at home and in school ended, and she no longer wet the bed.

As further evidence of N.R.'s improvements, N.R.'s foster mom testified that N.R. regressed when she spent an extended visit with W.C. N.R.'s foster mom testified that N.R. was fearful of W.C. when the children spent four days at her house for a respite visit together. N.R.'s foster mom explained that N.R.'s behavior "changed completely" in that she became emotionally escalated, regressed in her potty-training, barricaded herself in her room at night, stopped sleeping with her sound machine and eye mask on, and booby-trapped her door with a motion activated toy. N.R.'s foster mom testified that N.R. told her that "she was scared that [her] brother was the monster that was going to come into her room." N.R.'s foster mom testified that once W.C. left the house, these behaviors ended "like a flip of a switch."

8

Sheffler's testimony regarding N.R.'s improvements aligned with testimony from N.R.'s foster mom. Sheffler testified that when she took over the case, N.R. displayed negative behaviors in school and that her speech was so delayed that she was difficult to understand. However, since coming into care, Sheffler explained that N.R. has been attending school, counseling, and speech therapy, and made a lot of progress in these areas.

Next, substantial evidence was also presented that W.C. improved after removal from Doe's care. DeMasters testified that when W.C. came into care, he had substantial speech delays. W.C.'s foster mom testified that W.C. was insecure and very timid when he initially came to live with her family. She stated that W.C. would self-stimulate and self-soothe in order to calm himself, displayed a nervous tick and stutter, and required sleep aids. W.C.'s foster mom also testified that W.C. was very skinny and presented with food issues and, while very smart, he was undereducated and appeared to have fallen through the cracks in his education. But, W.C.'s foster mom stated that since coming into her family's care, many of these behaviors dissipated and people now comment that "he looks like a different kiddo." She explained that W.C.'s health improved; he put on weight; his issues around food diminished; and his teeth improved as a result of regular dental care. W.C.'s foster mom also testified that W.C. made educational improvements and, while not yet at grade level, he had made great strides.[3] Accordingly, substantial evidence supports the magistrate court's finding that the children improved while in foster care.

Doe argues on appeal that the magistrate court erred in terminating her parental rights because she loves her children. While it is undisputed that Doe loves the children and the children love her, love does not always translate into the ability to discharge parental responsibilities. *Idaho Dep't of Health & Welfare v. Doe (2014-17)*, 157 Idaho 694, 703, 339 P.3d 755, 764 (2014). Substantial evidence supports the magistrate court's conclusion that termination of Doe's parental rights is in the best interests of the children.

## C. The Magistrate Court Did Not Err in Finding the Children Were Not Indian Children Under the ICWA

Although not listed in her statement of issues presented on appeal, in her analysis Doe alleges the magistrate court erred in finding that Doe's children are not Indian children under the ICWA because there was no testimony at the termination trial regarding the ICWA status of the

---

[3]     W.C.'s foster mom testified that her son with autism is home schooled and she believed that W.C., who is also autistic, may also benefit from school options other than public school where W.C. could receive more one-on-one assistance.

children.  The failure of an appellant to include an issue in the statement of issues required by Idaho Appellate Rule 35(a)(4) will eliminate consideration of the issue from appeal.  *Kugler v. Drown*, 119 Idaho 687, 691, 809 P.2d 1166, 1170 (Ct. App. 1991).  This rule may be relaxed, however, where the issue is argued in the briefing and citation to authority is provided.  *Everhart v. Washington Cnty. Rd. and Bridge Dep't*, 130 Idaho 273, 274, 939 P.2d 849, 850 (1997).  Doe neither provided any argument or evidence that the children are Indian children under the ICWA or any information about the children's ICWA eligibility, nor explain how the alleged error impacted her substantial rights.  Accordingly, as this claim is not listed in the statement of issues presented on appeal and not supported by any argument, Doe waived consideration of this claim on appeal.

Even assuming Doe can challenge ICWA status for the first time on appeal from the judgment terminating her rights, she has failed to establish any error in relation thereto.  The ICWA only applies if the "court knows or has reason to know that an Indian child is involved" in the proceedings.  25 U.S.C. § 1912(a) (2018).[4]  The petition alleged the children are not Indian children and the Department's Adjudicative / Disposition Report of Investigation indicated the children are not of Indian heritage.  Further, at the shelter care hearing, Doe indicated the children are not Indian children.  Given that information, there was no basis on which to require the Department to supply additional testimony or evidence at the termination trial on efforts made to determine if the ICWA applied to this case.  Likewise, there was no reason for the magistrate court to believe that the children are enrolled members of an Indian tribe or even that they had a relationship to an Indian tribe.  Accordingly, the magistrate court did not err in finding the ICWA did not apply because the court had no reason to believe that either of the minor children are Indian children.

**D.     We Decline to Address Doe's Argument That the Department Did Not Provide Reasonable Efforts Towards Reunification**

Doe alleges that the magistrate court's finding that the Department provided reasonable efforts at reunification is not supported by substantial and competent evidence because the

---

[4]     A challenge to the constitutionality of the Indian Child Welfare Act is currently pending before the Supreme Court of the United States.  In *Brackeen v. Haaland*, 994 F.3d 249, 294 (5th Cir. 2021), the United States Court of Appeals for the Fifth Circuit recently held certain sections of the Indian Children Welfare Act are unconstitutional.  The parties appealed and the Supreme Court of the United States granted certiorari.  *Brackeen v. Haaland*, 142 S. Ct. 1205 (2022).

Department did not provide adequate resources for Doe to be able to satisfy all of her case plan tasks. As Doe acknowledges, because reasonable efforts are requirements under the Child Protection Act (CPA), not Idaho's parental rights termination statute, such findings are irrelevant to termination proceedings. *Matter of Doe I*, 164 Idaho 883, 889, 436 P.3d 1232, 1238 (2019). Therefore, as it is not relevant to the termination proceeding, we will not address Doe's claim that the Department did not provide reasonable efforts at reunification.

**E.      Ineffective Assistance of Counsel**

Doe alleges that her counsel provided ineffective assistance of counsel by failing to: (1) ask the magistrate court or the Department for accommodations relative to her disability based on her "social security eligibility" "due to her confirmed mental health diagnosis of ADHD, ADD, PTSD, and fetal alcohol syndrome"; and (2) present testimony from additional witnesses "to clarify, contradict, or confirm any of the prior testimony" which "placed the entirety of the burden on [Doe] to accurately remember and articulate the facts." Pursuant to I.C. § 16-2009, Doe has a right to counsel during a termination hearing and the Idaho Supreme Court has determined that I.C. § 16-2009 provides for effective representation in proceedings terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe (2010-28)*, 150 Idaho 563, 566, 249 P.3d 362, 365 (2011). The Idaho Supreme Court, however, has not yet established a standard for assessing ineffective assistance of counsel claims in termination cases, and we decline to do so here. However, because the parties rely on *Strickland v. Washington*, 466 U.S. 668 (1984) to analyze the issue, we address Doe's arguments to the extent the record on direct appeal allows consideration of the challenges Doe raises.

In applying the *Strickland* standard, at least in the context of post-conviction proceedings, which are another type of civil case, to prevail on a claim that trial counsel was ineffective, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland*, 466 U.S. at 687-88; *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at

442, 163 P.3d at 231. In the context of post-conviction proceedings, this Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

Doe has not established her trial counsel provided ineffective assistance by failing to ask the magistrate court or the Department for accommodations relative to her disability. The substance of Doe's claim is that her counsel failed to "preserve defenses and exercise potential additional rights" under the American's With Disabilities Act (ADA) because:

> [Doe's] social security eligibility is due to her confirmed mental health diagnosis of ADHD, ADD, PTSD, and fetal alcohol syndrome. The assessment confirmed her diagnosis. [Doe's] trial counsel failed to ask the Court or the Department for accommodations in accordance with her disability eligibility. Generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991). Because trial counsel failed to properly preserve this argument by raising it timely, the higher Court will be limited or prevented from considering it on appeal.

(Record citations omitted.) Doe does not assert what defenses, rights, or accommodations were applicable to her or how the absence of these unspecified defenses, rights, or accommodations impacted the outcome of the proceedings. Without this information, Doe cannot establish that her counsel provided deficient performance by failing to ask for accommodations or that she was prejudiced by such failure. As such, she cannot establish ineffective assistance of counsel on this basis. Moreover, the magistrate court found that Doe's disability did not render it impossible for her to complete her case plan and that Doe did not point to any supportive services that would enable her to carry out her parental responsibilities, noting: "[Doe] did not present evidence of any specific additional services that she qualified for, had been approved for, or that those supportive services could sufficiently aid her in parenting." Without identifying any necessary accommodations either in the magistrate court or on appeal, Doe cannot establish deficient performance on this ground.

Doe has also failed to establish her trial counsel provided ineffective assistance by declining to present testimony from additional witnesses. What witnesses to call at trial is a strategic or tactical decision. *Pomrenke v. State*, 169 Idaho 474, 479, 497 P.3d 548, 553 (Ct. App. 2021). This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate

preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011). There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Pomrenke*, 169 Idaho at 479, 497 P.3d at 553. As such, it is incumbent on the appellant to provide admissible evidence on the substance of the witnesses' testimony. *Self*, 145 Idaho at 581-82, 181 P.3d at 507-08. Absent an affidavit from the potential witness explaining what she would have testified to, or some other verifiable information about what the substance of the testimony would have been, an appellant fails to raise a genuine issue of material fact for an ineffective assistance of counsel claim. *Id.*; *see also Hall v. State*, 126 Idaho 449, 453, 885 P.2d 1165, 1169 (Ct. App. 1994).

While Doe states that her trial counsel should have called her husband, mother-in-law, and the Idaho County detective who performed an initial home visit, Doe does not identify any evidence in the record that these decisions were not strategic, especially given the testimony that Doe's husband is a thrice-convicted sex-offender and Doe's mother-in-law was hiding Doe's other child to evade Washington's child protection services. Further, Doe does not assert or identify any evidence in the record or make any argument on appeal indicating what these potential witnesses would have testified to, beyond a sweeping statement that they could have clarified, contradicted, or confirmed other unspecified testimony at trial. Doe has failed to show that any of the claimed actions or omissions constituted deficient performance and resulted in prejudice. As a result, Doe has failed to establish counsel was constitutionally deficient, much less that she was prejudiced as a result.

## IV.

## CONCLUSION

Substantial evidence supports the magistrate court's finding that Doe neglected her children and termination of Doe's parental rights is in the best interests of the children. Additionally, Doe's challenges to the children's ICWA status and to the Department's efforts at reunification are unavailing. The magistrate court did not err in relying on the representations of the Department and Doe that the children are not Indian children under the ICWA. Further, whether the Department provided reasonable efforts at reunification is not properly before the Court in this appeal. Finally, based on the record before this Court and Doe's arguments, Doe has

failed to demonstrate her counsel provided ineffective assistance. Accordingly, the magistrate court did not err and the judgment terminating Doe's parental rights is affirmed.

Chief Judge LORELLO and Judge BRAILSFORD **CONCUR**.